UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
KAREEM HINES, PRIAMO FERMIN and NEFTALI
PELLOT, individually and on behalf of all others
similarly situated,

                               **Plaintiffs,**

                   -against-

CBS TELEVISION STUDIOS, A DIVISON OF CBS
STUDIOS INC.; CBS BROADCASTING INC.; EYE
PRODUCTIONS INC.; and POSSIBLE PRODUCTIONS
INC.;

                             **Defendants.**
------------------------------------------------------------------------X

**FIRST AMENDED
COLLECTIVE AND CLASS
ACTION COMPLAINT**

**15-CV-07882**

**JURY TRIAL DEMANDED**

      Plaintiffs, Kareem Hines ("Hines"), Priamo Fermin ("Fermin"), and Neftali Pellot ("Pellot"), (collectively, "Plaintiffs"), on behalf of themselves and all others similarly situated by and through their attorneys, Valli Kane & Vagnini LLP, bring this action for damages and other legal and equitable relief from the Defendants, CBS Television Studios, a Division of CBS Studios Inc.; CBS Broadcasting Inc.; Eye Productions Inc.; and Possible Productions Inc., and allege as follows:

## INTRODUCTION

      1.     Defendants, CBS Television Studios, A Division of CBS Studios Inc., CBS Broadcasting Inc. and Eye Productions Inc. (collectively "CBS Defendants") and Possible

Productions Inc. (collectively with CBS Defendants, "Defendants") are media corporations focused on commercial broadcasting and television production.

2.      CBS Defendants produce and broadcast various television shows some of which are produced by Possible Productions Inc.

3.      Defendant Possible Productions Inc. operates the "Showtime" cable network and/or the "CW" Network in conjunction with CBS Defendants.

4.      Plaintiffs are Parking Production Assistants ("PPAs") hired by Defendants to secure sets, lots, streets and various individuals on production sites throughout the metropolitan area during the course of a production of a television series broadcast on the CBS network.

5.      PPAs are required to keep the production sites clear of pedestrians and motorists by either placing cones or parking company vehicles in order to block both foot and vehicle traffic. PPAs are also responsible for safeguarding production vehicles and equipment while they are on set.

6.      Plaintiffs, along with similarly situated current and former employees of Defendants, are non-exempt employees who are paid by a shift rate of pay but are not compensated properly for overtime hours worked per workweek.

7.      This is a collective and class action brought by Plaintiffs challenging acts committed by Defendants against Plaintiffs and those similarly situated for violations of Federal and State wage and hour laws.

8.      Defendants' regular failure to pay Plaintiffs and all other similarly situated employees for all hours over forty (40) in a workweek violates the Fair Labor Standards Act, as amended, 29 U.S.C. §§ 201 *et seq.* ("FLSA"), the New York State Labor Law §§650 *et seq.*, the

Wage Theft Prevention Act § 195 ("NYLL"), and any other cause(s) of action that can be inferred from the facts set forth herein.

9.      Defendants violate these laws by engaging in a systematic scheme of altering Plaintiffs' paychecks in order to deprive them of their statutorily required overtime pay.

10.     Plaintiffs allege, on behalf of themselves and similarly situated current and former employees who elect to opt into this action pursuant to the FLSA, that they are entitled to recover (i) unpaid and incorrectly paid wages for hours worked above 40 in a workweek, as required by law, (ii) unpaid overtime (iii) liquidated damages and (iv) attorney fees and costs pursuant to the FLSA, 29 U.S.C. §§201 *et seq.*, and further relief as this Court finds necessary and proper.

11.     Plaintiffs also bring this action, pursuant to the Fed. R. Civ. P. 23, on behalf of a class of all persons who are and were employed by Defendants in the New York metropolitan area as PPAs  (or comparable positions)  during the past six years through the final date of the disposition of this action who; (i) were not paid for all hours worked by them as well as unpaid overtime wages for hours worked above 40 in a workweek, as required by the NYLL; (ii) were subjected to Defendants' willful failure to comply with the notice and record keeping requirements of NYLL§195(1) and 195(3) resulting in penalties under NYLL § 198(1)b and 198(1)d; (iii) and who are entitled to recover (1) back pay, (2) unpaid overtime, (3) liquidated damages, (4) statutory damages for notice and recordkeeping violations, (5) attorney's fees and costs, and (6) interest, and further relief as this Court finds necessary and proper.

## JURISDICTION AND VENUE

12.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, which confers original jurisdiction upon this Court for actions arising under the laws of the United States, 28 U.S.C. § 1337, which confers original jurisdiction upon this Court for actions

arising under any Act of Congress regulating commerce, 28 U.S.C. § 2201, which confers original jurisdiction upon the filing of an appropriate pleading seeking to declare the rights and other legal relations of any interested party seeking such declaration, and 28 U.S.C. § 2202, conferring original jurisdiction concerning further necessary or proper relief based upon a declaratory judgment.

13.     The Court's supplemental jurisdiction is invoked pursuant to 28 U.S.C. § 1367(a), which confers supplemental jurisdiction over all non-federal claims arising from a common nucleus of operative facts such that they form part of the same case or controversy under Article III of the   United States Constitution.

14.     Venue is proper in this Court pursuant to 29 U.S.C. §§ 201-219, in as much as this judicial district lies in a State and District in which the unlawful employment practices occurred. Venue is also proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) and (c), in that Defendants maintain offices, conduct business and reside in this district.

## PARTIES

15.     Plaintiff Hines is a citizen of New York and resides in New York, New York.

16.     Plaintiff Fermin is a citizen of Pennsylvania and resides in Long Pond, Pennsylvania.

17.     Plaintiff Pellot is a citizen of New York and resides in Brooklyn, New York.

18.     Upon information and belief, Defendant CBS Television Studios, A Division of CBS Studios Inc. ("CBS Television Studios") is located at 51 W 52nd St, New York, York 10019 and transacted business in New York State by employing Plaintiffs and all those similarly situated in the New York metropolitan area during various television show productions.

19.      Upon information and belief, the amount of qualifying annual volume of business for Defendant CBS Television Studios exceeds $500,000.00, and thus subjects Defendant CBS Television Studios to the FLSA's overtime requirements.   Additionally, Defendant CBS Television Studios is engaged in interstate commerce. This independently subjects Defendant CBS Television Studios to the overtime requirements of the FLSA.

20.      Upon information and belief, Defendant CBS Broadcasting Inc. ("CBS Broadcasting") is located at 51 W 52nd St, New York, York 10019 and transacts business in New York State by employing Plaintiffs and all those similarly situated in the New York metropolitan area during various television show productions.

21.      Upon information and belief, the amount of qualifying annual volume of business for Defendant CBS Broadcasting exceeds $500,000.00, and thus subjects Defendant CBS Broadcasting to the FLSA's overtime requirements.  Additionally, Defendant CBS Broadcasting is engaged in interstate commerce. This independently subjects Defendant CBS Broadcasting to the overtime requirements of the FLSA.

22.      Upon information and belief, Defendant Eye Productions Inc. ("Eye Productions") is located at 51 W 52nd St, New York, York 10019 and transacts business in New York State by employing Plaintiffs and all those similarly situated in the New York metropolitan area during various television show productions.

23.      Upon information and belief, the amount of qualifying annual volume of business for Defendant Eye Productions exceeds $500,000.00, and thus subjects Defendant Eye Productions to the FLSA's overtime requirements.   Additionally, Defendant Eye Productions is engaged in interstate commerce. This independently subjects Defendant Eye Productions to the overtime requirements of the FLSA.

5

24.     Upon information and belief, Defendant Possible Productions Inc. ("Possible Productions") is located at 7800 Beverly Boulevard, Los Angeles, California and transacts business in New York State by employing Plaintiffs and all those similarly situated in the New York metropolitan area during the production of the following television series: *"Billions," "Nurse Jackie"* and *"Masters of Sex."*

25.     Upon information and belief, the amount of qualifying annual volume of business for Defendant Possible Productions exceeds $500,000.00, and thus subjects Defendant Possible Productions to the FLSA's overtime requirements.  Additionally, Defendant Possible Productions is engaged in interstate commerce. This independently subjects Defendant Possible Productions to the overtime requirements of the FLSA.

26.     At all relevant times, Defendants jointly employed Plaintiffs and together formed a "single integrated enterprise."

## FLSA COLLECTIVE ACTION ALLEGATIONS

27.     Plaintiffs bring the first claim for relief pursuant to 29 U.S.C. § 216(b) on their own as well as on behalf of all similarly situated persons who elect to opt into this action and work or have worked for any or all of the Defendants in the following collective class:

> All PPAs, or similarly titled employees, employed in the New York metropolitan area who worked in excess of forty (40) hours in a given workweek during the FLSA statutory period ("FLSA Plaintiffs") on the production of a television show which is broadcast on the CBS Network, or its affiliate networks.

28.     At all relevant times, Plaintiffs are similarly situated to all FLSA Plaintiffs because while employed by Defendants they performed similar tasks, were subject to the same laws and regulations, were paid in the same or similar manner, were paid the same or similar rate, were

required to work in excess of forty (40) hours per work-week, and were not paid the required one and a half (1 ½) times their respective regular rates of pay for overtime worked.

29.     Upon information and belief, Defendants treated all FLSA Plaintiffs similarly in requiring them to work in excess of forty (40) hours per workweek without adequate overtime compensation.  Plaintiffs and FLSA Plaintiffs work and/or worked for Defendants at various production sites throughout the New York metropolitan area four (4) to six (6) days per week for an average of sixty (60) to one-hundred (100) hours per week, if not more.  They were regularly and specifically scheduled to work more than forty (40) hours per workweek, yet Defendants did not pay them the statutorily required overtime compensation.  This practice was enforced as to all PPAs who worked on a show produced by one or more of the Defendants in a similar or identical fashion.

30.     Defendants are liable under the FLSA for, *inter alia*, failing to properly compensate the FLSA Plaintiffs. There are believed to be other FLSA Plaintiffs who would benefit from the issuance of a court-supervised notice of the present lawsuit and the opportunity to join the present lawsuit. Those similarly situated employees are known to Defendants, are readily identifiable, and can be located through Defendants' records.  Notice should be sent to the FLSA Plaintiffs pursuant to 29 U.S.C. § 216(b).

31.     As exemplified by their doctored payroll records, Defendants are and have been aware of the requirement to pay Plaintiffs and FLSA Plaintiffs an overtime rate for their hours in excess of forty (40) per workweek. However, Defendants have purposefully elected to force Plaintiffs and the FLSA Plaintiffs to work off-the-clock hours by unilaterally reducing their reported hours of work each workweek and thus have knowingly and willfully failed to pay overtime.

## RULE 23 CLASS ALLEGATIONS

32.     Plaintiffs additionally seek to maintain this action as a class action pursuant to Fed. R. Civ. P. 23(b)(3), on behalf of those who, during the previous six years, were subjected to violations of the NYLL.

33.     The Class which Plaintiffs seek to define includes:

> All PPAs, or similarly titled employees, employed in the New York metropolitan area, who worked in excess of forty (40) hours in a given workweek during the NYLL Labor Law statutory period ("New York Plaintiffs") on the production of a television show which is broadcast on the CBS Network, or its affiliate networks.

34.     The persons in the New York Class identified above are so numerous that joinder of all members is impracticable.  Although Plaintiffs do not know the precise number of such persons, the facts upon which to base the calculation of that number are readily ascertainable since the identity, addresses, time records, work schedules, positions and rates of pay for each Class Member are determinable from Defendants' records.  Notice can be provided pursuant to FRCP 23.

35.     Upon information and belief, during the previous six (6) years, Defendants have, in total, employed well in excess of 500 employees in order to staff their filming locations throughout the State of New York.

36.     There are questions of law and/or fact common to the New York Class that predominate over any questions solely affecting individual members of the New York Class, including but not limited to the following:

> a.    whether the New York Class were scheduled to work and/or required to work shifts of approximately twelve (12) hours, spanning four (4) to six (6) consecutive days per week;

b.   whether the New York Class were properly compensated for overtime pay pursuant to Defendants' policies;

c.   whether Defendants failed to properly pay the New York Class for the hours worked in excess of forty (40) hours;

d.   whether Defendants had a uniform policy and practice of paying a flat shift-rate of pay, including for overtime hours Defendants acknowledged Plaintiffs and the New York Class worked;

e.   whether Defendants required Plaintiffs to work "off-the-clock" prior to and/or after their shifts;

f.   whether Defendants reduced New York Class' actual hours worked each pay period in an effort to circumvent overtime pay requirements;

g.   whether Defendants kept accurate records of hours worked by the New York Class; and,

h.   whether Defendants have any affirmative defenses for any of these claims.

37.   The claims of the Plaintiffs are typical of the claims of the New York Class sought to be represented. The Plaintiffs and the other New York Class members are or were employed by one or more of the Defendants and have been subjected to their policies, patterns or practices of failing to pay overtime or proper overtime wages for hours worked in excess of 40 hours per week.

38.   Defendants employed Plaintiffs in the same capacity as members of the proposed New York Class. Plaintiffs and New York Class members were treated the same or similarly by management with respect to pay or lack thereof.  Thus, there are common questions of law and fact which are applicable to each and every one of Defendants' employees.

9

39.      This treatment included, but was not limited to, failure to pay employees the proper overtime wages.

40.      Plaintiffs will fairly and adequately represent and protect the interests of the New York Class.

41.      Plaintiffs have kept records from their time working for Defendants and would properly and adequately represent the current and former employees who have been subjected to the treatment alleged herein. Additionally, Plaintiffs' attorneys have substantial experience in this field of law.

42.      A class action is superior to other available methods for the fair and efficient adjudication of the NYLL claims, where individual plaintiffs may lack the financial resources to vigorously prosecute a lawsuit in federal court against a company. Class treatment of the New York Class claims is superior because it will obviate the need for duplicative litigation that may result in inconsistent judgments about Defendants' practices. Plaintiffs have no facts relating to the class claims that are atypical from those of the class. Indeed, upon information and belief, Plaintiffs have been treated identically to all other members of the proposed New York Class.

## STATEMENT OF THE FACTS

*Facts Common to all Plaintiffs and Defendants*

43.      Defendants fund and produce various television series which air on the CBS Network or its affiliated networks such as the Showtime (Possible Productions) cable network and/or the "CW" network.

44.      As part of such production, the Defendants hire PPAs to work on their various set locations in the New York metropolitan area.

45.     The PPAs secure the production sites during the course of the television production. In order for the PPAs to properly secure the production premises, they are required to work round-the-clock surveillance without any breaks.

46.     As PPAs, Plaintiffs are required to work during all hours in which Defendants or their property are present on a location, including during inclement weather and when the set is shut down for any reason.

47.     Plaintiffs are unable to leave the location for food and are not provided compensation for either lunch or dinner, although dinner is provided for other employees of the Defendants.

48.     Plaintiffs are given limited access to the restrooms on the production sites. Plaintiffs are only provided restroom privileges when and if the production is in the midst of filming. Otherwise, Plaintiffs are forced to go to the bathroom in their car or pay local businesses in order to use their restroom facilities. Due to limitations on their ability to leave their assigned locations, many of the Plaintiffs are forced to urinate and defecate into bottles and buckets in their vehicles.

49.     Moreover, Plaintiffs are forced to work in extreme weather and at times are not allowed to use heaters or are forced to run their vehicles 24 hours per day in order to have heat or air conditioning.

50.     Generally, at each filming location, a location manager, a parking coordinator and an accountant for Defendants determine a flat rate of pay per shift.

51.     The Defendants were then responsible for scheduling the Plaintiffs for work and determining the amount of shifts each Plaintiff will work in a given week.

52.     Defendants paid Plaintiffs and those similarly situated with a flat shift-rate of pay ranging from $140.00 to $160.00 for each twelve (12) hour shift.  This rate of pay varied based on the production on which Plaintiffs were working.  The most common shift rate was $150.00 per shift.

53.     Plaintiffs never have any influence or say over their rate of pay per shift.

54.     Defendants provide a payroll company with all the necessary hiring and employment records including, but not limited to: W2 employment forms, W4 Employment Forms, Pay Rate Acknowledgment Forms, Wage Verification Forms, Conflict of Interest Questionnaires, Direct Deposit Forms and Employment Verification Forms.

55.     During the execution of these documents, Defendants require Plaintiffs to leave the wage information blank on the Wage Verification Forms and Defendants later fill in this information with the rates necessary to complete their scheme of depriving Plaintiffs of their due overtime pay.

56.     Defendants would then provide the final pay information for each PPA to a payroll company that issued paychecks to the Plaintiffs on a weekly basis.

57.     These paychecks did not accurately reflect the agreed upon rates of pay or the hours worked each week or the number of hours actually worked by each Plaintiff.

*CBS DEFENDANTS*

58.     From October 1, 2009 to the present, CBS Defendants produced and aired multiple television shows which are filmed in New York.

59.     CBS Defendants, in conjunction with numerous production companies, employ PPAs subjected to the unlawful pay practices described above.

60.     During the relevant time period and presently, these television shows include, but are not limited to: *"Elementary," "Billions," "Limitless," "Unforgettable," "A Gifted Man,"* *"Gossip Girl," "Person of Interest," "CSI: New York," "Bluebloods," "The Good Wife," "Code Black," "The Odd Couple," "NCIS: Los Angeles," "Criminal Minds," "Masters of Sex,"* *"Madam Secretary,"* and *"Nurse Jackie"* ("CBS Shows").

61.     All Plaintiffs are similarly situated to PPAs working on any of these CBS shows.

### Kareem Hines

62.     Beginning in or around 2012, Plaintiff Hines has worked as a PPA on the television series *"Elementary,"* produced by the CBS Defendants.

63.     Plaintiff Hines was paid $150 per twelve (12) hour shift and worked on average between sixty (60) and one-hundred (100) hours a week.

64.     Plaintiff Hines was required to work in excess of 40 hours per week without receiving proper overtime compensation.

65.     Plaintiff Hines' paycheck did not reflect the actual hours worked and he was effectively made to work "off the clock."

### Priamo Fermin

66.     Beginning in or around 2012 to the present, Plaintiff Fermin worked as a PPA on the television series *"Billions"*, produced by the CBS Defendants and Defendant Possible Productions.

67.     Plaintiff Fermin was paid $150 per twelve (12) hour shift and worked on average between sixty (60) and one-hundred (100) hours a week.

68.     Plaintiff Fermin was required to work in excess of 40 hours per week without receiving proper overtime compensation.

69.     Plaintiff Fermin's paycheck did not reflect the actual hours worked and he was effectively made to work "off the clock."

*Neftali Pellot*

70.     Beginning in or around 2012 to the present, Plaintiff Pellot worked as a PPA on the television series "*Limitless*", produced by the CBS Defendants.

71.     Plaintiff Pellot was paid $150 per twelve (12) hour shift and worked on average between sixty (60) and one-hundred (100) hours a week.

72.     Plaintiff Pellot was required to work in excess of 40 hours per week without receiving proper overtime compensation.

73.     Plaintiff Pellot's paycheck did not reflect the actual hours worked and he was effectively made to work "off the clock."

*The Violations*

74.     Although Defendants informed Plaintiffs that they were to be paid on a flat shift-rate, Defendants never correctly accounted for lawful overtime pay.   Rather, ***Defendants unilaterally reduced the number of actual hours worked and calculated a fictitious, hourly overtime rate which ultimately resulted in Plaintiffs receiving only the flat shift rate***.

75.     As such, the reported hours worked on each of the paychecks were consistently less than what Plaintiffs actually worked during that pay period.

76.     Upon information and belief, Defendants obtain the assistance of accountants and/or employees to calculate the precise number of regular, overtime and double time hours that are needed to be recorded on Plaintiffs' check so that the weekly gross earning will total a pre-determined budget allotment accounted for by Defendants.

77.     Defendants' methodology of "backing out" the hours to meet a pre-determined weekly figure is unlawful, as it directly resulted in the Plaintiffs being improperly paid for their total hours worked.

78.     In order to hide the fact that Plaintiffs were being paid less than statutorily required, Defendants falsely and incorrectly stated the numbers of hours worked in their payroll records and on Plaintiffs' paychecks.  Defendants did not take into account the fact that Plaintiffs' shifts were twelve (12) hours in length when computing their hours worked per week.  This was all done on the Defendants' part as an effort to withhold from Plaintiffs their lawfully deserved compensation.

79.     In effect, Defendants were continuously "shaving" hours that Plaintiffs worked each week, forcing the PPAs to work "off-the-clock."

80.     As a result, Plaintiffs were not paid for actual hours worked throughout the workweek.

81.     Upon information and belief, Plaintiffs and those similarly situated have been treated uniformly throughout their employment with Defendants at their various work locations.

82.     At all times, Defendants controlled all terms and conditions of Plaintiffs' employment, including but not limited to their hours and rates of pay.

83.     All Defendants were aware of their payroll practice and were consciously disregarding the requirements under the FLSA and New York Labor Law.

84.     All Defendants were knowingly and willfully paying Plaintiffs and other PPAs a shift-rate for hours worked over 40 rather than an hourly rate, which deprived them of statutorily mandated overtime.

85.     This falsification of payroll records further evidences Defendants' knowing and willful violation of the law.

## CAUSES OF ACTION

## AS AGAINST ALL DEFENDANTS BY ALL PLAINTIFFS

### First Cause of Action
### for Violation of the Fair Labor Standards Act, 29 U.S.C. §§ 201-219

86.     Plaintiffs re-allege and incorporate by reference all allegations in all preceding paragraphs.

87.     Defendants employed the FLSA Plaintiffs, and employed or continue to employ, each member of the FLSA Plaintiff collective within the meaning of the FLSA.

88.     Defendants have engaged in a widespread pattern and practice of violating the FLSA, as detailed in the Complaint.

89.     The Plaintiffs consent in writing to be a party to this action, pursuant to 29 U.S.C. § 216(b).

90.     The overtime wage provisions set forth in 29 U.S.C. §§201, *et seq.*, apply to Defendants.

91.     Defendants have a policy and practice of paying a shift rate of pay in lieu of an hourly rate and overtime.  Said shift pay did not accurately reflect overtime pay due to FLSA Plaintiffs.

92.     As a result of Defendants' willful failure to compensate FLSA Plaintiffs at a rate not less than one and one-half times the regular rate of pay for work performed in excess of 40 hours in a workweek, Defendants have violated, and continues to violate, the FLSA.

93.     As a result of Defendants' willful failure to record, credit and/or compensate FLSA Plaintiffs, Defendants have failed to make, keep, and preserve records with respect to each of their

employees sufficient to determine the wages, hours and other conditions and practices of employment, in violation of the FLSA.

94.     As a result of Defendants' FLSA violations, FLSA Plaintiffs are entitled to recover from Defendants: (a) overtime compensation; (b) an additional, equal amount as liquidated damages for Defendants' willful violations of the FLSA; and, (c) reasonable attorney's fees, and costs and disbursements of this action, pursuant to 29 U.S.C. §216(b).

95.     Because Defendants' violations of the FLSA lacked good faith, a three-year statute of limitations applies pursuant to 29 U.S.C. §255.

## Second Cause of Action
## for Violation of the New York Labor Law §§ 650 *et. seq.*

96.     Plaintiffs on behalf of themselves and the New York Class, re-allege and incorporate by reference all proceeding paragraphs above as if they were set forth again herein.

97.     Defendants employed Plaintiffs, and employed or continue to employ, each of the members of the New York Class within the meaning of the NYLL.

98.     Defendants have engaged in a widespread pattern and practice of violating the minimum and overtime wage provisions of Article 19 of the NYLL and its supporting regulations, as detailed in the Complaint.

99.     The minimum and overtime wage provisions of Article 19 of the NYLL and its supporting regulations apply to Defendants.

100.     Defendants have failed to pay Plaintiffs and the New York Class the minimum and overtime wages to which they are entitled under the NYLL.

101.     By virtue of Defendants' failure to pay Plaintiffs and the New York Class minimum and overtime wages for all hours worked in excess of forty (40) hours per week, Defendants have willfully violated NYLL Article 19, §§650, *et seq.*, and the supporting New York State Department

17

of Labor Regulations, including but not limited to the regulations in 12 N.Y.C.R.R. 142-2.1 and 12 N.Y.C.R.R. 142-2.2.

102.     As a result of Defendants' willful violations of the NYLL as relates to the Plaintiffs, they and the New York Class are entitled to recover from Defendants their unpaid minimum wages, overtime wages, liquidated damages, prejudgment and post-judgment interest, as well as reasonable attorney's fees and costs of this action.

103.     Defendants' NYLL violations have caused the Plaintiffs and the New York Class irreparable harm for which there is no adequate remedy at law.

### Third Cause of Action for Violation of the New York Labor Law

104.     Plaintiffs, on behalf of themselves and the New York Class, re-allege and incorporate by reference all proceeding paragraphs above as if they were set forth again herein.

105.     NYLL §195(3) requires that Defendants furnish each employee with a statement with every payment listing gross wages, deductions and net wages, and upon request of an employee, an explanation of the computation of wages.

106.     NYLL §195(4) requires, among other things, that Defendants establish and maintain, for at least six (6) years payroll records showing the hours worked, gross wages, deductions and net wages for each employee.

107.     NYLL §661 requires that Defendants maintain, *inter alia*, true and accurate records of hours worked by each employee covered by an hourly minimum wage rate, and the wages paid to all employees.

108.     12 N.Y.C.R.R. §142-2.6 requires Defendants to establish, maintain and preserve, for six (6) years, weekly payroll records showing, *inter alia*, each employee's name, wage rate,

number of hours worked daily and weekly, amount of gross and net wages, deductions from gross wages, and any allowances claimed as part of the minimum wage.

109.    N.Y.C.R.R. §142-2.7 requires Defendants to furnish each employee with a statement with every payment of wages, listing hours worked, rates paid, gross and net wages, deductions, and allowances, if any, claimed as part of the minimum wage.

110.    Defendants did not provide Plaintiffs or the New York Class with accurate or truthful requisite notices and statements described above in the foregoing paragraphs.

111.    As a result of Defendants' failure to comply with the notice and record keeping requirements of NYLL §195 (including subsections (3) and (4) thereof, Plaintiffs and members of the New York Class are entitled to recover from Defendants penalties as provided by NYLL §198(1)(b) and 198(1)(d).

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, on behalf of themselves and all FLSA Plaintiffs and the New York Class employed by each Defendant, demand judgment against Defendants as follows:

112.    At the earliest possible time, Plaintiffs should be allowed to give notice of this collective action, or the Court should issue such notice, to all FLSA Plaintiffs.  Such notice shall inform them that this civil action has been filed, of the nature of the action, and of their right to join this lawsuit if they believe they were denied proper overtime wages;

113.    Designation of Plaintiffs as representatives of FLSA Plaintiffs and the New York Class, and Plaintiffs' counsel as Class Counsel;

114.    Equitable tolling of the FLSA statute of limitations as a result of the Defendants failure to post requisite notices under the FLSA;

115.     Certification of this action as a class action pursuant to FRCP Rule 23 for the purposes of the claims brought on behalf of all New York Class members under New York Labor Law and the New York Department of Labor Regulations;

116.     Penalties under NYLL §§ 198(1)(b) and 198(1)(d) for the Defendants' failure to comply with the notice and record-keeping requirements of NYLL §§ 195(1) and 195(3);

117.     Demand a jury trial on these issues to determine liability and damages;

118.     Preliminary and permanent injunctions against Defendants and their officers, owners, agents, successors, employees, representatives, and any and all persons acting in concert with them, from engaging in each of the unlawful practices, policies, customs, and usages set forth herein;

119.     A judgment declaring that the practices complained of herein are unlawful and in violation of the Fair Labor Standards Act, 29 U.S.C. §§ 201-219, ("FLSA"), the New York Labor Law, §§ 650 *et. seq.* and the Wage Theft Prevention Act, § 195 of the New York Labor Law as amended in April 2011;

120.     All damages which Plaintiffs and all FLSA Plaintiffs and the New York Class have sustained as a result of Defendants' conduct, including back pay, liquidated damages, front pay, general and special damages for lost compensation and job benefits they would have received but for Defendants' improper practices;

121.     An award to the Plaintiffs and all FLSA Plaintiffs and the New York Class of pre-judgment interest at the highest level rate, from and after the date of service of the initial complaint in this action on all unpaid wages from the date such wages were earned and due;

122.     An award to the Plaintiffs and all FLSA Plaintiffs and the New York Class representing Defendants' share of FICA, FUTA, state unemployment insurance and any other required employment taxes;

123.     An award to the Plaintiffs and all FLSA Plaintiffs and the New York Class for the amount of unpaid wages, including interest thereon, and penalties subject to proof;

124.     Awarding Plaintiffs their costs and disbursements incurred in connection with this action, including reasonable attorneys' fees, expert witness fees, and other costs;

125.     Pre-judgment and post-judgment interest, as provided by law; and

126.     Granting Plaintiffs and all FLSA Plaintiffs and the New York Class other and further relief as this Court finds necessary and proper.


Dated: May 13, 2016
   Garden City, New York



           Respectfully Submitted,

           VALLI KANE & VAGNINI, LLP
           600 Old Country Road, Suite 519
           Garden City, New York 11530
           516-203-7180

           James Vaghini (JV-2163)
           Robert J. Valli, Jr. (RV-9995)
           Matthew Berman (MB-0707)