## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

KAREEM HINES, PRIAMO FERMIN, and
NEFTALI PELLOT, individually and on behalf
of all others similarly situated,

Civil Action No:  15-CV-07882-PGG

Plaintiffs,

v.

CBS TELEVISION STUDIOS, A DIVISION OF
CBS STUDIOS INC.; CBS BROADCASTING
INC.; EYE PRODUCTIONS INC.; and
POSSIBLE PRODUCTIONS INC.,
Defendants.

**PLAINTIFFS' UNOPPOSED MOTION FOR CERTIFICATION OF SETTLEMENT
CLASS AND COLLECTIVE, FINAL APPROVAL OF PROPOSED SETTLEMENT,
AND APPROVAL OF ATTORNEYS' FEES AND COSTS, CLAIMS ADMINISTRATOR
AND SERVICE PAYMENTS AND INCORPORATED MEMORANDUM OF LAW**

## TABLE OF CONTENTS

Table of Contents…………………………………………………………………..………i

Table of Authorities  …………………...…………………….…………………………iii

I. INTRODUCTION…………..……………………………………………………...3

II. FACTUAL & PROCEDURAL BACKGROUND…………………………...……...4
    A.  The Parties' Claims and Defenses…………………………..………………………4
    B.  Procedural History and Settlement Negotiations…………………………..………..5

III. SUMMARY OF THE SETTLEMENT…………………………………………...9
    A.  Definition of Settlement Class……………………………………...………………9
    B.  Qualified Settlement Fund and Programmatic Relief…………………………..…10
            1.  Common Fund Settlement………………………..…………………………......11
                a.  Claims Administration………………………..……………….......11
                b.  Notice ………………………………………...…………………12
            2.  Programmatic Relief………………………...…………………………...15

IV. ARGUMENT AND AUTHORITIES…………………………………………………15
    A.  Legal Standards for Final Approval of Class Action Settlements…………….……16
    B.  Approval…………………………………………………………………… 17
    C.  Approval Under FRCP 23……………………………………………...……17
            1.  The Prerequisites of Rule 23(a) Are Satisfied…………..………………………18
                a. The Class is Sufficiently Numerous………………………..………18
                b. There are Common Questions of Law or Fact…………………...…..19
                c. The Claims or Defenses are Typical……………….…..……………20
                d. Class Counsel and the Class Representatives are Adequate…..……..21
            2.  The Prerequisites of Rule 23(b)(3) are Satisfied………....……………..…......22
                a. Common Issues Predominate……………….….……..…..…………23
                b. Class Settlement is Superior to Other Methods…………….…..……24
    D.  The Settlement Is Non-Collusive, Fair, Adequate And Reasonable…………..…………25
            1.  Procedural Fairness…………………………………..………………..…………25
            2.  Substantive Fairness…………….....……………………..……..…………27
               a.  Litigation Through Trial Would be Complex, Costly and Long
                    (*Grinnell* Factor 1)............................................................................ 27
                b.  Class Reaction Has Been Very Positive (*Grinnell* Factor 2)....……......….. 28
                c.  The Stage of the Proceedings and the Amount of Discovery Completed
                    Support Final Approval (*Grinnell* Factor 3)……………….....………………30
                 d.  Plaintiffs Would Face Real Risks in Seeking to Establish Liability
                    and Damages if the Lawsuit Was to Proceed
                    (*Grinnell* Factors 4 and 5)……………………………….....…....………………..32

      e.   Obtaining Class or Collective Certification and Maintaining That
           Certification Through Trial May Be Difficult (*Grinnell* Factor 6)..................33
      f.   The Settlement Amount is Reasonable, Even in Light of the Best Possible
           Recovery, Given the Risks of Litigation
           (*Grinnell* Factors 7, 8 and 9).................................................…………......…34

E.  Approval of the FLSA Settlement..................…………………………………....…38

V.  REQUESTS FOR AN AWARD OF ATTORNEYS' FEES, COSTS, AND EXPENSES;
    SERVICE AWARDS; AND ADMINISTRATION FEES SHOULD BE
    APPROVED…………………………….....................................................................38

A.  Attorneys' Fees, Costs, and Expenses..............................................................… 38

      1.  The time and labor expended by counsel…………...........….…………………..42
      2.  The magnitude and complexities of the litigation…….......…………………..…44
      3.  The risk of the litigation………………………........…………………….……44
      4.  The quality of representation.………………………………….……………….45
      5.  The requested fee in relation to the settlement.…..........…………………….…46
      6.  Public policy considerations……………...………......…………………….…47

B.  Cross-Check…………….....………………………….....…………………....…48
C.  Administration Fees.......................................................................................……50
D.  Service Awards to Settlement Class Representatives Should be Approved…..................51

VI. CONCLUSION………………..………………………………………………..…52

## <u>TABLE OF AUTHORITIES</u>

*A.H. Phillips v. Walling*,
   324 U.S. 490 (1945) ............................................................................................................ 48

*Acevedo v. Workfit Med. LLC*,
   187 F.Supp.3d 370 (W.D.N.Y. 2016) .............................................................................. 29

*Amchem v. Workfit Med. LLC*,
   521 U.S. 591, 618-620 (1997) .......................................................................................... 22

*Amgen, Inc. v. Connecticut Ret. Plans & Trust Funds*,
   133 S. Ct. 1184 (2013) ...................................................................................................... 23

*Ansoumana v. Gristede's Operating Corp.*,
   201 F.R.D. 81 (S.D.N.Y. 2001) ....................................................................................... 17

*Arbor Hill Concerned Citizens Neighborhood Association v. County of Albany*,
   522 F.3d 182 (2nd Cir. 2008) ........................................................................................... 46

*Attenborough v. Const. and Gen. Bldg. Laborers' Local 79*,
   238 F.R.D. 82 (S.D.N.Y. 2006) ....................................................................................... 20

*Barrentine v. Arkansas-Best Freight Systems, Inc.*,
   450 U.S. 728 (1981) .......................................................................................................... 44

*Beckman v. KeyBank, N.A.*,
   293 F.R.D. 467 (S.D.N.Y. 2013) ............................................................................. passim

*Blum v. Stenson*,
   465 U.S. 886 (1984) .......................................................................................................... 40

*Boeing Co. v. Van Gemert*,
   444 U.S. 472, (1980) ......................................................................................................... 40

*Brooks v. Am. Export Indus., Inc.*,
   1977 U.S. Dist. LEXIS 17313 (S.D.N.Y. Feb. 17, 1977) ............................................... 37

*Brown, et al. v. Medicis*,
   13-cv-01345, Dkt. 52 at 4 (DOC, July 11, 2016) ..................................................... 45, 46

*Cagan v. Anchor Sav. Bank FSB*,
   1990 U.S. Dist. LEXIS 11450 (E.D.N.Y. May 17, 1990) .............................................. 37

*Caissie et al. v. BJ's Wholesale Club*,
   08-cv-30220 (D. Mass. 2010) .......................................................................................... 50

*Calle v. Elite Specialty Coatings Plus, Inc.*,
   2014 WL 6621081 (E.D.N.Y. Nov. 21, 2014) ................................................................ 42

*Caridad v. Metro-North Commuter R.R.*,
   191 F.3d 283 (2d Cir. 1999) ............................................................................................. 20

*Castagna v. Madison Square Garden, L.P.*,
   2011 WL 2208614 (S.D.N.Y. June 7, 2011) ..................................................... 16, 20, 32

*Chambery v. Tuxedo Junction, Inc.*,
   10 F.Supp.3d 415 (W.D.N.Y. 2014) .............................................................................. 19

*Charron v. Pinnacle Group N.Y. LLC*,
   874 F.Supp.2d 179 (S.D.N.Y. 2012) .............................................................................. 35

*Charron v. Wiener*,
   731 F.3d 241 (2d Cir. 2013) ............................................................................................. 35

*City of Detroit v. Grinnell Corp.*,
   495 F.2d 448 (2d Cir. 1974) ............................................................................................. 27

*Clem v. Keybank, N.A.,*
   2014 WL 2895918 (S.D.N.Y. June 20, 2014) ........................................... 23, 32, 41

*Conley v. Sears, Roebuck & Co.,*
   222 B.R. 181 (D. Mass. 1998) ................................................................... 50

*Consol. Rail Corp. v. Town of Hyde Park,*
   47 F.3d 473 (2d Cir. 1995)........................................................................ 18

*D'Amato v. Deutsche Bank,*
   236 F.3d 78 (2d Cir. 2001)........................................................................ 25

*Damassia v. Duane Reade, Inc.,*
   250 F.R.D. 152 (S.D.N.Y. 2008) .............................................................. 39

*Denney v. Jenkens & Gilchrist,*
   230 F.R.D. 317 (S.D.N.Y. 2005) .............................................................. 51

*Diaz v. E. Locating Serv. Inc.,*
   2010 WL 5507912 (S.D.N.Y. Nov. 29, 2010)................................... passim

*Dodge v. County of Orange,*
   208 F.R.D. 79 (S.D.N.Y. 2002) ................................................................ 19

*Febus v. Guardian First Funding Group, LLC,*
   870 F.Supp.2d 337 (S.D.N.Y. 2012)......................................................... 42

*Flores, et al. v. K.C. 53 LLC et al.,*
   No. 12-cv-8095 (S.D.N.Y. Sept. 16, 2013) .............................................. 51

*Frank v. Eastman Kodak Co.,*
   228 F.R.D. 174 (W.D.N.Y. 2005)....................................................... 16, 32

*Garcia v. Atlantico Bakery Corp.,*
   2016 WL 3636659 (S.D.N.Y. June 29, 2016) .......................................... 41

*Gen. Tel. Co. of Southwest v. Falcon,*
   457 U.S. 147 (1982)................................................................................... 20

*Gilliam v. Addicts Rehab. Ctr. Fund,*
   2008 U.S. Dist. LEXIS 23016 (S.D.N.Y. Mar. 24, 2008) ................... 16, 35

*Goldberger v. Integrated Resources, Inc.,*
   209 F.3d 43 (2d Cir. 2000)................................................... 22, 27, 42, 49

*Green v. Wolf Corp.,*
   406 F.2d 291 (2d Cir. 1968)...................................................................... 24

*Guippone v. BH S&B Holdings, LLC,*
   2011 U.S. Dist. LEXIS 126026 (S.D.N.Y. Oct. 28, 2011) ...................... 52

*Hernandez v. Merrill Lynch & Co., Inc.,*
   2012 WL 5862749 (S.D.N.Y. Nov. 15, 2012).......................................... 16

*Hernandez v. Merrill Lynch & Co., Inc.,*
   2013 WL 1209563 (S.D.N.Y. Mar. 21, 2013) .................................... 21, 48

*Hicks v. Morgan Stanley & Co.,*
   2005 U.S. Dist. LEXIS 24890 (S.D.N.Y. Oct. 19, 2005) ........................ 49

*Hyun v. Ippudo USA Holdings,*
   2016 WL 1222347 (S.D.N.Y. Mar. 24, 2016) ......................................... 36

*In re Austrian and German Bank Holocaust Litig.,*
   80 F.Supp.2d 164 (S.D.N.Y. 2000) .................................................... 16, 34

*In re Boesky,*
   888 F.Supp. 551 (S.D.N.Y. 1995) ........................................................... 49

iv

*In re Drexel Burnham Lambert Group, Inc.*,
  960 F.2d 285 (2d Cir. 1992)..................................................................... 20, 21
*In re Elec. Books Antitrust Litig.*,
  639 F.Appx. 724 (2d Cir. 2016).................................................................... 29
*In re EVCI Career Colls. Holding Corp. Sec. Litig.*,
  2007 WL 2230177 (S.D.N.Y. July 27, 2007) ................................................ 26
*In re Global Crossing Sec. & ERISA Litig.*,
  225 F.R.D. 436 (S.D.N.Y. 2004) .................................................................. 45
*In re Indep. Energy Holdings PLC Sec. Litig.*,
  302 F.Supp.2d 180 (S.D.N.Y.  2003)............................................................ 47
*In re Interpublic Sec. Litig.*,
  2004 WL 2397190 (S.D.N.Y. Oct. 26, 2004) ................................................ 32
*In re Ira Haupt & Co.*,
  304 F.Supp. 917 (S.D.N.Y. 1969) ................................................................ 32
*In re Prudential Ins. Co. America Sales Litigation*,
  148 F.3d 283 (3d Cir. 1998)......................................................................... 28
*In re Relafen Antitrust Litig.*,
  231 F.R.D. 52 (D.Mass. 2005)...................................................................... 28
*In re Top Tankers, Inc. Sec. Litig.*,
  2008 WL 2944620 (S.D.N.Y. July 31, 2008) ................................................ 26
*In re Tyco International MDL Litigation*,
  535 F.Supp.2d 249 (D.N.H. 2007) .......................................................... 40, 49
*In re Volkswagen*,
  784 F.Supp.2d 35 (D.Mass. 2011) .......................................................... 41, 49
*Indergit v. Rite Aid*,
  293 F.R.D. 632 (S.D.N.Y. 2013) .................................................................. 45
*Kudo v. Panda Express*,
  7:09-cv-00712, Dkt. 308 at 5-6 (S.D.N.Y. June 26, 2015)............................. 45
*Lizondro-Garcia v. Kefi LLC*,
  300 F.R.D. 169 (S.D.N.Y. 2014) ............................................................. 34, 38
*Long v. HSBC USA Inc.*,
  2015 WL 5444651 (S.D.N.Y. Sept. 11, 2015)............................................... 21
*Maley v. Dale Global Techs. Corp.*,
  186 F.Supp 2d 358 (S.D.N.Y. 2002)............................................................. 46
*Manley v. Midan Rest. Inc.*,
  2016 WL 1274577 (S.D.N.Y. Mar. 30, 2016) ............................................... 36
*Massiah v. MetroPlus Health Plan, Inc.*,
  2012 WL 5874655 (E.D.N.Y. Nov. 20, 2012)................................................ 51
*McCoy v. Health Net, Inc.*,
  569 F.Supp.2d 448 (D.N.J. 2008)............................................................ 33, 37
*McDaniel v. County of Schenectady*,
  595 F.3d 411 (2d Cir. 2010)......................................................................... 40
*McMahon v. Olivier Cheng Catering & Events, LLC*,
  2010 WL 2399328 (S.D.N.Y. Mar. 3, 2010) ...................................... 27, 40, 48
*Meza v. 317 Amsterdam Corp.*,
  2015 WL 9161791 (S.D.N.Y. Dec 14, 2015) ................................................ 42

*Mills v. Capital One, N.A.*,
    2015 WL 5730008 (S.D.N.Y. Sept. 30, 2015) ........................................................... 30

*Mohney v. Shelly's Prime Steak, Stone Crab & Oyster Bar*,
    2009 WL 5851465 (S.D.N.Y. Mar. 31, 2009) ............................................................ 20

*Morris v. Affinity Health Plan, Inc.*,
    859 F.Supp.2d 611 (S.D.N.Y. 2012) .................................................................... 20, 21

*New England Carpenters Health Benefits Fund et. Al. v. First Databank, Inc.*,
    2009 U.S. Dist. LEXIS 68419 (D. Mass. Aug. 3, 2009) ............................................ 50

*Newman v. Stein*,
    464 F.2d 689 (2d Cir. 1972) ...................................................................................... 34

*Noble v. 93 Univ. Place Corp.*,
    224 F.R.D. 330 (S.D.N.Y. 2004) ............................................................................... 18

*Officers for Justice v. Civil Service Comm'n of the City and County of San Francisco*,
    688 F.2d 615 (9th Cir. 1982) ...................................................................................... 35

*Parker v. Jekyll & Hyde Entm't Holdings, LLC*,
    2010 WL 532960 (S.D.N.Y. Feb. 9, 2010) ................................................................ 50

*Port Authority Police Benev. Ass'n, Inc. v. Port Authority of New York and New Jersey*,
    698 F.2d 150 (2d Cir. 1983) ....................................................................................... 19

*Prasker v. Asia Five Eight LLC*,
    2010 WL 476009 (S.D.N.Y. Jan. 6, 2010) ........................................................... 20, 30

*Protective Comm. For Indep. S'holders of TMT Trailer Ferry, Inc. v. Anderson*,
    390 U.S. 414 (1968) .................................................................................................... 17

*Rangel v. 639 Grand St. Meat & Produce Corp.*,
    2013 WL 5308277 (E.D.N.Y. Sept. 19, 2013) ........................................................... 42

*Reyes v. Altamarea Grp., LLC*,
    2011 WL 4599822 (S.D.N.Y. Aug. 16, 2011) ...................................................... 44, 47

*Reyes v. Buddha–Bar NYC*,
    2009 WL 5841177 (S.D.N.Y. May 28, 2009) ............................................................ 20

*Riedel v. Acqua Ancien Bath New York LLC*,
    2016 WL 3144375 (S.D.N.Y. May 19, 2016) ...................................................... passim

*Roberts, et al. v. TJX*,
    13-cv-13142, Dkt. No. 172 at 6 (D. Mass 9/30/16) ................................................... 46

*Robidoux v. Celani*,
    987 F.2d 931 (2d Cir.1993) ........................................................................................ 18

*Sand v. Greenberg*,
    2010 WL 69359 (S.D.N.Y. Jan. 7, 2010) ................................................................... 48

*Savoie v. Merchants Bank*,
    166 F.3d 456 (2d Cir. 1999) ....................................................................................... 49

*Seijas v. Republic of Argentina*,
    606 F.3d 53 (2d Cir. 2010) ......................................................................................... 23

*Sewell v. Bovis Lend Lease, Inc.*,
    2012 WL 1320124 (S.D.N.Y. Apr. 16, 2012) ....................................... 24, 43, 49, 50

*Sheppard v. Consol. Edison Co. of N.Y., Inc.*,
    2002 U.S. Dist. LEXIS 16314 (S.D.N.Y. Aug. 1, 2002) ........................................... 51

*Spann v. AOL Time Warner, Inc.*,
    2005 WL 1330937 (S.D.N.Y. June 7, 2005) .............................................................. 25

*Sylvester v. CIGNA Corp.*,
  369 F.Supp.2d 34 (D.Me. 2005) ................................................................. 29
*Taft v. Ackermans*,
  2007 U.S. Dist. LEXIS 9144 (S.D.N.Y. Jan. 31, 2007).......................... 45
*Teachers' Ret. Sys. of Louisiana v. A.C.L.N. Ltd.*,
  2004 U.S. Dist. LEXIS 8608 (S.D.N.Y. May 14, 2004)......................... 35
*Torres v. Gristede's Corp.*,
  2006 WL 2819730 (S.D.N.Y. Sept. 29, 2006)........................................ 23
*Torrisi v. Tucson Elec. Power Co.*,
  8 F.3d 1370 (9th Cir. 1993) ...................................................................... 14
*Toure v. Amerigroup Corp.*,
  2012 WL 3240461 (E.D.N.Y. Aug. 6, 2012)............................................ 26
*Trief v. Dun & Bradstreet Corp.*,
  144 F.R.D. 193 (S.D.N.Y. 1992) .............................................................. 19
*United Slate, Tile & Composition Roofers, Damp & Waterproof Workers Ass'n, Local 307 v.*
  *G&M Roofing & Sheet Metal Co., Inc.*,
  732 F.2d 495 (6th Cir. 1984) .................................................................... 48
*Velez v. Majik Cleaning Serv., Inc.*,
  2007 WL 7232783 (S.D.N.Y. June 25, 2007) ........................................ 32
*Velez v. Novartis Pharms. Corp.*,
  2010 WL 4877852 (S.D.N.Y. Nov. 30, 2010)........................................ 29
*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
  396 F.3d 96 (2d Cir. 2005)................................................................... passim
*Weinberger v. Kendrick*,
  698 F.2d 61 (2d Cir.1982)................................................................... 14, 35
*Williams v. First Nat'l Bank*,
  216 U.S. 582 (1910)................................................................................... 16
*Yuzary v. HSBC Bank USA, N.A.*,
  2013 WL 5492998 (S.D.N.Y. Oct. 2, 2013) ....................... 32, 40, 47, 51
*Zeltser v Merrill Lynch & Co., Inc., 13 CIV. 1531 FM, 2014 WL 4816134,*
  *at *9* (SDNY Sept. 23, 2014)………………………………………………..  49


Statutes

29 U.S.C. § 201 ................................................................................................. 2
29 U.S.C. § 216(b) ...................................................................................... 16, 37
New York Labor Law, §§ 650 ........................................................................ 2

Rules

Federal Rule of Civil Procedure 23 ....................................................... passim

Other Authorities

*Hybrid Class Actions, Dual Certification, and Wage Law Enforcement in the Federal Courts*,
  29 Berkeley J. Emp. & Lab. L. 269 (2008)........................................... 29
*Principles of the Law of Aggregate Litigation* § 3.13(b), (c) at 248-49 (2010).......................... 41

Plaintiffs, including Named Plaintiffs, the opt-in Plaintiffs and all members of the Settlement Class[1] (collectively "Plaintiffs") by and through their counsel, hereby move the Court for final approval of the proposed Parking Production Assistant ("PPA") class and collective action settlement ("Settlement") set forth in the Settlement Agreement, which was previously submitted to the Court (Document No. 195) in connection with Plaintiffs' motion for preliminary approval (Document No. 194).  The Settlement Agreement will fully and completely settle *Hines et al. v. CBS Corporation et al.* Civil Action No. 15-CV-07882 as against *CBS Television Studios, A Division of CBS Studios Inc.; CBS Broadcasting Inc.; Eye Productions Inc.; and Possible Productions Inc.*[2] (for the purposes of this motion, "Defendants," and together with Plaintiffs, the "Parties").[3]   Plaintiffs respectfully submit this Memorandum of Law, the accompanying Declaration of Sara Wyn Kane ("Kane Decl."), and the Declaration of Jennifer M. Keough ("JND Decl.") (Exhibit 2 to Kane Decl.) in Support of Plaintiffs' Unopposed Motion for Certification of the Settlement Class and Collective, Final Approval of the Proposed Settlement, and Approval of Attorneys' Fees and Costs, Claims Administrator Fees and Service Payments.  Further, the Parties request that the Court fully and finally approve the terms of the Settlement Agreement between Plaintiffs and Defendants.

The preliminarily approved Settlement was reached after extensive pre- and post-suit investigation, the exchange of copious documents and information between the Parties, an extensive analysis of those documents, the creation and exchange of numerous damage calculation and damages allocation spreadsheets and many months of arms-length and good faith negotiations

---

[1] All capitalized terms not otherwise defined herein shall have the meaning ascribed in the Settlement Agreements.

[2] Pursuant to Rule 41, on or about January 28, 2016, Hill of Beans Productions, Inc.; K/O Paper Products, Inc.; Action This Day!, Inc.; and CBS Corporation were voluntarily dismissed by Plaintiffs (Dkt. Nos. 77, 79, 80 & 81) and on May 24, 2016 Relativity Media, LLC; Timberman-Beverly Productions, Inc.; and Showtime Entertainment, Inc. were voluntarily dismissed by Plaintiffs with the filing of the Amended Complaint. (Dkt. No. 118).

[3] With the Final Approval of this motion, as of the Effective Date, the case shall be dismissed in its entirety.

between counsel for the Parties, including a full-day mediation before Dina R. Jansenson. The Settlement provides a fair, reasonable and adequate recovery to those who were employed as PPAs for Defendants, and who challenged Defendants' PPA payment and payroll practices under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA"), and New York Labor Law, §§ 650, *et seq.* ("NYLL"). Indeed, Class Counsel submit that the Settlement more than satisfies the fair, reasonable and adequate recovery standard as it provides Class Members with the outstanding recovery of 100% of their alleged overtime damages and the equivalent of 53% of alleged liquidated damages AFTER payment of the Service Payments, and Class Counsel's fee request.[4]

This Court found the Settlement within the range of fair, reasonable and adequate settlements when it granted Preliminary Approval on August 24, 2018 (Dkt. No. 193). Following the Court's Preliminary Approval Order, the Parties and the Claims Administrator complied with the notice plan. The Notice and Claim Forms informed each member of the Settlement Class of (1) the average individual award should the Court finally approve the Settlement, (2) the amount of fees, costs and expenses sought by Class Counsel, (3) the amount of Service Payments sought by Class Counsel on behalf of the Class Representatives and (4) that settlement administration costs and fees, employers' share of Employer Payroll Taxes, and payments to the Named Plaintiffs for a General Release will be paid in addition to the Gross Settlement Amount. *See* Exhibits A, B, C & D to JND Decl. (Formula, Notice Packet (including Claim Form), Reminder Card and Deficiency Notice). Class Members have responded very favorably to the Settlement. Notably, no Settlement Class Member has opted out of the Settlement, nor have any objections been lodged. Kane Decl. ¶ 19 & JND Decl. ¶ 15 & 17 (annexed as Exhibit 2 to Kane Decl.). In light of the significant risks posed by continuing litigation and the possibility of no recovery at all on behalf

---

[4] By using a portion of Unclaimed Funds, this liquidated damages percentage could have increased for Participating Claimants based on the participation rate.

of the Class, the Settlement is fair, reasonable, and adequate, and accordingly, should be finally approved.

Defendants do not oppose the instant motion and consent to the entry of the proposed order attached hereto as Exhibit 1.  In support of their motion for final approval, Plaintiffs submit the following incorporated memorandum.

## I.    <u>INTRODUCTION</u>

Plaintiffs hereby move, unopposed, for final approval of the Settlement, which has been reached after many months of arm's-length and good-faith negotiations including a full day mediation before Dina R. Jansenson, who has extensive experience mediating class and collective action wage and hour cases such as this one.   The Settlement reached by Plaintiffs and Defendants includes: (1) a maximum gross settlement amount of Nine Million Nine Hundred Seventy Seven Thousand Five Hundred Two Dollars and Zero Cents ($9,977,502.00) plus interest[5] and (2) non-monetary benefits as described more fully in the Settlement Agreement.

Plaintiffs are Parking Production Assistants ("PPAs") who secure sets, lots and streets on production sites throughout the New York metropolitan area during the course of various television and film productions.  The claims herein are limited to productions that operated within the State of New York.  Plaintiffs are non-exempt employees who, at the time of the commencement of the Class and Collective Litigations, allege they were paid a daily shift rate of pay, and allege that they were not properly compensated for overtime hours worked in respective work weeks.  It is Plaintiffs' contention that Defendants' alleged failure to pay Plaintiffs and all other similarly situated employees the proper rate for all hours worked over forty (40) in a workweek was willful

---

[5] On the date of the Preliminary Approval Order, one-half of the Gross Settlement Amount began earning interest of 2% which interest will be included in the payment made to the QSF upon funding and disbursed among participating claimants.

and violative of the FLSA and NYLL.  Defendants deny such allegations and contend that they complied with the FLSA and NYLL at all times, and that Plaintiffs' claims are not suited for class and collective treatment, except for the limited purpose of this Settlement.

Pursuant to the Settlement Agreement, Plaintiffs respectfully request that the Court enter a Final Approval Order that does the following: (1) adjudges the terms of the Settlement Agreement to be fair, reasonable and adequate, and in the best interest of the Plaintiffs, Opt-In Plaintiffs and members of the Settlement Class and thereby approving the terms and conditions of the Agreement; (2) appoints the Named Plaintiffs as Plaintiffs who, together with Class Counsel, shall be authorized to act on behalf of all Members of the Settlement Class with respect to the Litigation and the Settlement Agreement; (3) appoints Plaintiffs' Counsel as Class Counsel for the Settlement Class pursuant to Section 216(b) of the FLSA; (4) authorizes distribution of the Settlement Checks; (5) approves Class Counsel's application for an award of Class Counsel's Fees, Costs and Expenses; (6) approves the Service Payments to Plaintiffs; and (7) dismisses the Litigation with prejudice and enter Judgment of Dismissal pursuant to this Agreement and in accordance with Fed. R. Civ. P. 58.

## II.    FACTUAL & PROCEDURAL BACKGROUND

### A.    The Parties' Claims and Defenses

Plaintiffs alleged that PPAs worked on productions in the five boroughs of New York City and surrounding Counties, all within the State of New York, including during hours in which Defendants and/or their property are present on a set location.  Plaintiffs further alleged that, at the commencement of the Class and Collective Litigations, they were paid a flat shift rate of pay for each twelve-hour shift, were not paid properly calculated overtime compensation required by the FLSA and the NYLL, and that Defendants did not comply with the notice and statement

4

requirements of the New York Wage Theft Prevention Act ("WTPA").   Plaintiffs also asserted

that as all PPAs are allegedly uniformly subjected to the same payroll procedures pursuant to

common policies and plans, the claims are sufficiently suited for class and collective treatment.

At all points during this litigation, Defendants have disputed Plaintiffs' contentions, and

expressly denied all of Plaintiffs' allegations.  Defendants also contend that Plaintiffs' claims are

not suited for class and collective treatment, other than in the context of this proposed Settlement.

**B.**     **Procedural History and Settlement Negotiations**

On October 6, 2015, Plaintiffs Kareem Hines, Priamo Fermin, and Neftali Pellot filed

*Hines et al. v. CBS Corporation et al.,* Civil Action No. 15-07882 (S.D.N.Y.) (the "Complaint"),

(*See* Declaration of Sara Wyn Kane at ¶ 2 (the "Kane Declaration" or "Kane Decl."), seeking

damages under the FLSA and NYLL on a class and collective action basis. *See* Kane Decl. ¶ 6.

Plaintiffs allege that Defendants: (1) did not properly pay Plaintiffs overtime at a rate of

one and one/half (1.5) times the regular rate for all hours worked over forty (40) in a workweek,

as required under the FLSA and the NYLL; and (2) did not comply with wage notice and wage

statement requirements of the NYLL.

Following the filing of the Complaint and after Morgan Lewis & Bockius LP ("Defense

Counsel") was retained, the Parties held numerous discussions regarding the scope of the claims,

applicability of defenses, as well as to determine the appropriate parties in the action.  It took time

to determine who the appropriate defendants were, as there are typically a number of producers

and/or production companies involved in any given production. See Kane Decl. at 7.  Further,

because multiple defendants were involved in multiple productions, it required time and further

discussions to ascertain which production company would, strictly for the purposes of this

litigation, assume responsibility for the employment of PPAs for each specific production and

additional negotiations to confirm the productions covered by the settlement.  Thus, on May 24, 2016, Plaintiffs amended the Complaint to add, remove and/or correct the names of plaintiffs and certain of the defendants (Dkt Nos. 77, 79-81,118).  In the months after the Complaint was filed the Parties explored settlement of the claims.  To facilitate these negotiations, the Parties exchanged detailed information and numerous documents, and conducted detailed legal and factual analyses of the Plaintiffs' claims and Defendants' defenses.  Both sides conducted their own analysis regarding the (1) potential liability if the claims were to proceed; (2) relative strengths and weaknesses of the legal merits of their respective positions; and (3) risks associated with each side's respective positions.  One of the key documents in each of these negotiations was a spreadsheet that contained anonymized information for every PPA who worked on the relevant productions.[6]

Moreover, in the course of the litigation, Class Counsel conducted a significant factual investigation into the Claims.  The investigation included interviewing over one hundred potential opt-ins and/or class members and obtaining and reviewing hundreds of pages of data pertaining to job duties, payment methodology, hours worked, schedules, time sheets, policy manuals, pay stubs and working conditions.  Class Counsel also investigated and analyzed the applicable state and federal law as applied to the facts discovered with regard to the claims asserted and the potential defenses thereto.  *See* Kane Decl. ¶ 8.

The Parties' respective investigations also included the informal exchange of spreadsheets which included over twenty-five thousand weeks of payroll entries and financial data produced by Defendants.  Plaintiffs' counsel undertook an extensive investigation and analysis of these records in order to determine Plaintiffs' potential damages, including back pay, liquidated damages, and

---

[6] Information on these exchanged spreadsheets was anonymized except for the Named Plaintiffs.

Wage Theft Prevention Act damages. *See* Kane Decl. ¶¶ 8-9. During the investigation, Class Counsel interviewed either in person, telephonically or via electronic means potential opt-ins and obtained and reviewed relevant data from these individuals. *See* Kane Decl. ¶ 8. During the investigation, over one hundred (100) individuals opted into the lawsuit despite the fact that notice had yet to be sent out. *Id.*

Counsel for the Parties met in person and telephonically on many occasions to discuss the claims and defenses in this action, as well as to review the information necessary to have productive settlement discussions. Ultimately, the Parties agreed to mediate the claims and on October 24, 2017, the Parties engaged in an all-day mediation session under the direction of Dina R. Jansenson, an experienced class and collective action mediator, including in similar wage and hour cases with hybrid allegations pursuant to both state and federal law. *See* Kane Decl. ¶ 14. During the mediation the Parties vigorously debated the merits of their respective positions. Matters addressed at mediation included the size and scope of the alleged claims, the likelihood of success on the merits on those claims, potential damages and the likelihood of whether Plaintiffs' claims could be certified as a class or collective action. The claims were not resolved at the end of the twelve (12) hours of mediation. *See* Kane Decl. ¶ 15. Rather, over the next seven (7) months, the Parties continued to engage in extensive negotiations and discussions. The Parties met both in person and telephonically to resolve numerous and at times contentious outstanding issues, including regarding the scope of the settlement and calculation of alleged damages. On or about May 2, 2018 two years after the initial complaint was filed, the Parties ultimately agreed on the terms of a settlement. Thereafter, the Parties exchanged numerous drafts of language addressing the Plaintiffs' claims and the terms of the settlement. The Parties' good-faith settlement negotiations were at all times non-collusive and conducted at arm's length. *See* Kane Decl. ¶ 16.

In or around July 27, 2018, these additional negotiations resulted in an agreement to settle the Plaintiffs' claims on the terms set forth in the Settlement Agreement.  Specifically, following extensive negotiations, the Parties agreed to settle Plaintiffs' claims as to any production produced, co-produced, or financed by the Defendants' Released Parties (as defined in the Settlement Agreement) during the six years preceding the filing of the Complaint through August 24, 2018 (date of Preliminary Approval).  The Parties agreed to these terms to achieve a comprehensive settlement and avoid further litigation of the issues. *See* Kane Decl. ¶ 17.

Parties and their counsel recognize that, in the absence of an approved settlement, they would face a long and uncertain litigation course, including motions to dismiss, motions related to conditional and class certification, formal discovery, motions for summary judgment, trial and potential appellate proceedings.  The litigation would consume significant amounts of time and resources, and present the Parties with ongoing litigation risks and uncertainties.  The Parties desire to avoid these risks and uncertainties, and filed for conditional certification of this Settlement. Kane Decl. ¶ 21.   Following the notice and claim phase, Plaintiffs' Counsel continues to believe that the terms of the Settlement are without question in the Class' best interest and remain fair, reasonable, and adequate. Kane Decl. ¶ 28. Additionally, as the Court is aware, this case is one of a dozen similar wage and hour overtime cases that have been brought in this Court on behalf of PPAs employed by different production companies.  While the other settled PPA cases generally contain similar factual and legal allegations, they were brought against different movie and/or television production studios.  Further, throughout the pendency of this action Defendants raised additional issues which were not attendant during the negotiation of the other PPA settlements. Specifically, here Defendants argued that the fact that they adjusted their pay practices required an alteration of Plaintiffs' damages calculations as they relate to liquidated damages and the NYS

WTPA.  This led to many months of additional document review, analysis and negotiations.  Thus, each of the various PPA cases required individual discovery, payroll records, analysis, negotiations and ultimately extensive drafting of specific settlement and motion papers.  Although not binding, presently there is substantial precedent of both preliminary and final approval of settlements (including, critically, with respect to the monetary recoveries by individual class members) similar to the one presented here that Plaintiffs contend supports the granting of final approval in this case. Therefore, Plaintiffs respectfully request that the Court take notice of the prior decisions in the other PPA actions.[7]

### III.   SUMMARY OF THE SETTLEMENT

### A.   Definition of Settlement Class

In order to effectively obtain resolution of Plaintiffs' claims, the Settlement encompassed both claims arising under the FLSA, in the form of a collective action resolution, and claims arising under the NYLL, in the form of a Rule 23 class action resolution.  To finalize the Settlement,[8] Plaintiffs and Defendants seek final approval/certification of the following Settlement Class with two components defined as follows:

### FLSA Collective Action:

All individuals who held the position of "Parking Production Assistant" or "PPA" and/or provided any services as a PPA from October 6, 2012

---

[7]These other actions include: *Leach et al. v. NBCUniversal et al.* 15-cv-7206; *Leach et al. v. Warner Bros. et al.* 15-cv-7208; *Fermin et al. v. Broken Records LLC* 15-cv-7941; *Pellot et al. v. Paramount et al.* 16-cv-0463; *Morgan et al. v. Columbia et al.* 16-cv-1402; *Morel v. Lions Gate* 16-cv-1407; *Headlam et al. v. 20th Century Fox et al.* 16-cv-1408; *June et al. v. NBCUniversal et al.* 16-cv-1409; *Morgan et al. v. Warner Bros. Pictures et al.* 16-cv-1411; *Muhammed et al. v. ABC et al.* 16-cv-4133; *Solano-Rodriquez v. Amazon Studios, Inc. et al.* 17-cv-1587.

[8] Though Defendants would, in the course of litigation, oppose the merits of the Plaintiffs' claims and oppose the certification of any collective under Section 216(b) of the FLSA and the certification of any class under Federal Rule of Civil Procedure 23, they do not oppose the instant motion for final approval of the proposed settlement or the certification of the proposed Settlement Class for settlement purposes only.  To the extent that the Court does not grant final approval of the proposed Settlement, Defendants reserve the right to raise any argument with respect to the merits of the Plaintiffs' claims or the appropriateness of the certification of any FLSA collective or Rule 23 class that they might have otherwise undertaken in litigation, and to make arguments that are contrary to the positions taken by the Plaintiffs in this memorandum.

through April 29, 2017, on any production produced, co-produced, or financed by Defendants (as defined by the Settlement Agreement), including but not limited to CBS Television Studios, A Division of CBS Studios Inc., CBS Broadcasting Inc., Eye Productions Inc., Possible Productions Inc., or any of their parents, subsidiaries or Affiliates who are listed on the Class List provided by Defendants to the Claims Administrator;

**RULE 23 NYLL Class**

All individuals who held the position of "Parking Production Assistant" or "PPA" and/or provided any services as a PPA from October 6, 2009 through April 29, 2017, on any production produced, co-produced, or financed by Defendants (as defined by the Settlement Agreement), including but not limited to CBS Television Studios, A Division of CBS Studios Inc., CBS Broadcasting Inc., Eye Productions Inc., Possible Productions Inc., or any of their parents, subsidiaries or Affiliates who are listed on the Class List provided by Defendants to the Claims Administrator.[9]

Settlement Agreement §§1.9, 1.13, 1.32.

**B.      Qualified Settlement Fund and Programmatic Relief**

If final approval is granted, the Settlement provides that Defendants will pay a Gross Settlement Amount of Nine Million Nine Hundred Seventy Seven Thousand Five Hundred Two Dollars and Zero Cents ($9,977,502.00) plus interest[10] into a qualified settlement fund ("QSF") to resolve the claims as detailed in the Settlement Agreement (see Settlement Agreement at § 1.19), and the Settlement Agreement confirms that one or more Defendants have already engaged in efforts to provide other benefits to PPAs.

---

[9] The statute of limitations for the New York state law claims is six years. NYLL § 663. The start of the applicable time period is the date six years prior to the filing of the action.  The end of the applicable time period is August 24, 2018, the date of Preliminary Approval.

[10] On the date of the Preliminary Approval Order, one-half of the Gross Settlement Amount began earning interest of 2% which interest will be included in the payment made to the QSF upon funding and disbursed among participating claimants.

### 1.      Common Fund Settlement

Under the Settlement Agreement the Gross Settlement Amount (hereinafter referred to as the "Gross Settlement Amount" or "Settlement Amount") represents the maximum amount Defendants agreed to pay, inclusive of the settlement payments; Class Counsel's requested attorneys' fees, expenses and costs; and requested service payments to certain Plaintiffs to resolve the claims. *Id*.  Each Participating Claimant will receive a pro rata share of the Net Settlement Fund which is the Gross Settlement Amount less deductions for the Court-approved Class Counsel's Fees, Costs and Expenses; Court-approved Service Payments; and a $25,000 Reserve Fund.[11]  The Employers' share of the Employer Payroll Taxes for Participating Claimants,  the costs of the Claims Administrator, and the payments to the Class Representatives in exchange for general releases will be paid in addition to the Gross Settlement Amount. Settlement Agreement. *Id*.[12]

Under the Settlement Agreement, no Participating Class Member shall receive less than fifty dollars ($50.00). *See* Settlement Agreement at § 1.2.

#### a.      *Claims Administration*

As set forth in the Preliminary Approval Order, the QSF is being administered by an independent and experienced third-party settlement administrator, JND Legal Administration LLC ("JND" or the "Claims Administrator"), who will handle the management and distribution of the Fund.  JND has substantial experience and expertise carrying out these duties which include, but

---

[11] A percentage of the Unclaimed Funds may be distributed to the Participating Claimants on a pro rata basis as determined by the percentage of Participating Claimants, and as discussed more fully below.

[12] The QSF will include funds to cover the payments to the Named Plaintiffs of up to $2,500 each and payments Settlement Class to Members Collette Sajjad, Raynier Delgadillo, Christian Pellot, Robert Tracey, John Carusi, and Michael Sapia of up to $1,000 each.  The QSF will also include funds to cover the costs of the service of the Claims Administrator and the Employer's share of any Employer Payroll Taxes as set forth in the Settlement Agreement at 13.2(a) ("Additional Funds").

are not limited to, the determination of awards for valid claims, compliance with all applicable tax reporting, and payment of taxes on such awards. Settlement Agreement § 6.2.

To maximize participation, the Settlement Agreement provided for the Claims Administrator to engage in several layers of outreach to the potential Class Members, including providing a Notice Form, Claim Form, Reminder Notice, email and mail notification as well as maintain a static website with relevant documents.  JND engaged in the aforementioned activities. (See JND Decl. ¶¶ 5-9 annexed as Exhibit 2 to Kane Decl.).  Any interest earned on the QSF will be included in the Gross Settlement Amount.

        b.    *Notice*

Pursuant to the Preliminary Approval Order, each member of the Settlement Class was sent, by first-class U.S. mail and emailed if an email address was available, a Settlement Notice in the form approved by the Court, along with an individualized Claim Form (also in the form approved by the Court), that set forth the material settlement terms; instructions on how members of the Settlement Class may participate in the Settlement; instructions on how members of the Settlement Class may exclude themselves from, or submit objections to, the Settlement and when and where to appear at the final approval hearing, among other important information, including the average amount of the Settlement Payments based on the application of the allocation formula set forth in the Settlement Agreement (assuming final approval).   *See* JND Decl. in its entirety annexed as Exhibit 2 to Kane Decl.

Prior to sending the Settlement Notices and Claim Forms, JND reviewed the list of Members of the Settlement Class provided by Defendants pursuant to the Settlement Agreement and updated mailing addresses using the National Change of Address (NCOA) database. Additionally, Class Counsel provided JND with updated address information based on data

collected from their investigation.  JND Decl. ¶ 3.  After JND performed those address updates, each of the 298 members of the Settlement Class had a complete mailing address.  *Id.*

On October 24, 2018, Settlement Notices were sent by JND to each of the 1,098 Members of the Settlement Class.  JND Decl. ¶ 5.  On December 4, 2018, JND sent a reminder postcard (in the form preliminary approved by the Court) to the 778 Members of the Settlement Class who had not filed a fully completed Claim Form. JND Decl. ¶ 7.  In addition, JND established and maintained a Settlement-specific website (which has had 3,973 page views between October 24, 2018 and January 25, 2019) to allow Members of the Settlement Class to learn information about the proposed Settlement and review relevant documents. JND Decl. ¶ 9. JND also established a Settlement-specific toll-free telephone number for Members of the Settlement Class to call to learn information about the proposed Settlement from live JND associates.  Between its establishment and January 25, 2019, the toll-free number received 719 calls.  JND Decl. ¶ 10.

As of the date of this motion, 625 Claim Forms had been fully and timely received by JND.[13]  JND Decl. ¶ 13.  During the period for Members of the Settlement Class to respond to the Settlement Notice, 148 mailed Settlement Notices were returned to JND as undeliverable.  JND Decl. ¶ 6.   JND re-mailed 106 such Settlement Notices using updated address information found via skip-trace research. In total, 7 Notices were returned a second time as undeliverable.  *Id.* Therefore, as of the date of JND's declaration, a total of 49 Members of the Settlement Class had all mailed Settlement Notice attempts returned as undeliverable.  *Id.*

---

[13] Pursuant to the Settlement Agreement, the deadline to submit timely claim forms was December 24, 2018. However, due to the Parties' understanding that additional Claim Forms tend to arrive through the date of the Final Approval Hearing, the Parties have agreed to permit certain Claims Filed through the date of the Final Approval Hearing.  Therefore, while as of today, there are 625 timely claims, we anticipate there may be a few additional timely claims. JND Decl. ¶ 13.

13

In addition, as of December 24, 2018 the date by which all requests for exclusion were required to have been received by JND in order to be effective, no individuals mailed requests for exclusion from the Settlement.  JND Decl. ¶ 17.

In addition, as of November 23, 2018, the date by which objections were to have been made, JND did not receive any objections to the Settlement from Members of the Settlement Class and up through the date of JND's declaration, JND and Class Counsel are not aware of any such objections having been filed with the Court.  JND Decl. ¶ 15.  Class Counsel submits that there is no doubt that the Settlement Notice program set forth in the Settlement Agreement, ordered in the Court's Preliminary Approval Order, and carried out by JND, complied with Your Honor's Order, Fed. R. Civ. P. 23, the FLSA and due process.[14]

A settlement notice must "fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings." *Weinberger v. Kendrick*, 698 F.2d 61, 70 (2d Cir. 1982).  It must also be "understood by the average class member."  *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 114 (2d Cir. 2005) (internal citations omitted).

Here, the proposed Notice provides clear and accurate information as to the nature and principal terms of the Settlement, including the average amount of monetary relief the Settlement will provide Members of the Settlement Class should they become Participating Claimants (as well as an explanation of the method for allocating the settlement funds to Class Members and of the claims process), the procedures and deadlines for opting-in and submitting a Claim Form, the

---

[14] This Court, the Second Circuit and the Supreme Court have held that "[t]he standard for the adequacy of a settlement notice in a class action under either the Due Process Clause or the Federal Rules is measured by reasonableness.  There are no rigid rules to determine whether a settlement notice to the class satisfies constitutional or Rule 23(e) requirements." *Riedel v. Acqua Ancien Bath New York LLC*, 2016 WL 3144375 (S.D.N.Y. May 19, 2016).  *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1374-75 (9th Cir. 1993) (notice generally describing terms of settlement and formula for computing awards, mailed out 45 days before hearing, met requirements of Rule 23 and due process).

process for opting-out of the Settlement, how to submit objections, and the consequences of taking or foregoing the various options available to Members of the Settlement Class.  The Notice Form also provides details on the date, time and place of the final approval hearing.  *See* MANUAL FOURTH at § 21.312. Pursuant to FED. R. CIV. P. 23(h), the proposed Notice also sets forth the maximum amount of Attorneys' Fees and Lawsuit Costs which may be sought by Class Counsel, to which no one objected.  Thus, the Notice approved by this Court satisfies the standard.

### 2.      Programmatic Relief

In response to the allegations raised by Plaintiffs, and without any admission of wrongdoing or liability, Defendants confirmed that they had taken and/or would take steps to review their wage compliance practices, including reviewing the allegations in the Complaint, reviewing current policies and/or practices, and providing guidance to individuals involved in the compensation process. Thereafter, Class and Defense Counsel engaged in a meaningful dialogue to discuss the same and counsel have continued to communicate regularly about issues that have arisen and steps that could be taken to investigate and address the issues.

The Settlement Agreement acknowledges that Defendants have taken or have agreed to take steps to ensure they continue to comply with applicable wage and hour laws.  Settlement Agreement § 16.  Class Counsel acknowledge that Defendants have incurred and will continue to incur significant costs to take such steps, which will result in an ongoing benefit to the Class. Accordingly, a portion of certain unclaimed settlement funds will reimburse Defendants for such costs.

### IV.      ARGUMENT AND AUTHORITIES

By this Motion, the Plaintiffs seek Final Approval of the Settlement. Class Counsel represents that the Settlement is fair, reasonable, and adequate. *See* Kane Decl. ¶ 28.  In fact, Class

Counsel believe that the Settlement provides an excellent result given all considerations. *See* Kane Decl. ¶ 27.  At a minimum, Class Counsel and the Plaintiffs submit that the proposed Settlement is in the best interests of the Members of the Settlement Class in light of all known facts and circumstances, including the risks and delays of litigation that are presented by Defendants' defenses to the claims and potential pre-trial and appellate issues Defendants may assert. *See* Kane Decl. ¶ 28.

### A.    Legal Standards for Final Approval of Class Action Settlements.[15]

It is well-established that "compromises of disputed claims are favored by the courts." *Williams v. First Nat'l Bank*, 216 U.S. 582, 595 (1910).  "Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them."  *In re Austrian and German Bank Holocaust Litig.*, 80 F.Supp.2d 164, 174 (S.D.N.Y. 2000), *aff'd*, 236 F.3d 78 (2d Cir. 2001).  Settlement also spares the litigants the uncertainty, delay and expense of trial while simultaneously reducing the burden on judicial resources.  *See Hernandez v. Merrill Lynch & Co., Inc.*, 2012 WL 5862749, at *2 (S.D.N.Y. Nov. 15, 2012) (endorsing settlement of wage and hour class action); *Castagna v. Madison Square Garden, L.P.*, 2011 WL 2208614, at *6 (S.D.N.Y. June 7, 2011) (commending plaintiffs' attorneys for negotiating early settlement); *Diaz v. E. Locating Serv. Inc.*, 2010 WL 5507912, at *3 (S.D.N.Y. Nov. 29, 2010) (granting final approval of pre-suit class settlement in wage and hour case).

---

[15] The Settlement settles all wage and hour claims brought by the Plaintiffs, both under the NYLL and the FLSA.  The claims asserted under the FLSA are brought as a putative "collective action," in which putative FLSA collective members must affirmatively "opt-in" to the litigation.  29 U.S.C. § 216(b).  The claims asserted under the NYLL, on the other hand, are brought as a putative "opt-out" class action under the general class action provisions of Rule 23. When considering final approval of "hybrid" collective and class actions involving wage and hour claims courts have looked at the fairness, adequacy, and reasonableness of the settlement under both statutory frameworks by examining the *Grinnell* factors.  *See, e.g., Frank v. Eastman Kodak Co.,* 228 F.R.D. 174 (W.D.N.Y. 2005)*; Gilliam v. Addicts Rehab. Ctr. Fund,* 2008 U.S. Dist. LEXIS 23016, at *8 (S.D.N.Y. Mar. 24, 2008).

### B.  Approval

Even though complex, "where state wage and hour violations are brought as an 'opt out' class action pursuant to Rule 23 in the same action as the FLSA 'opt in' collective action pursuant to 29 U.S.C. § 216(b)," (e.g.: a Hybrid Action), Federal Courts routinely certify such hybrid FLSA/Rule 23 cases for settlement.  "Justice is served and consistency and efficiency are achieved by having the litigation in one forum because the same set of operative facts are being applied and analyzed under both statutory frameworks." *See Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 476 (S.D.N.Y. 2013) (certifying a federal collective under the FLSA and state law settlement Class under Rule 23 at preliminary and final approval stages) citing *Ansoumana v. Gristede's Operating Corp.,* 201 F.R.D. 81, 89 (S.D.N.Y. 2001); *Riedel v. Acqua Ancien Bath New York LLC*, 2016 WL 3144375, at *8 (S.D.N.Y. May 19, 2016) (certifying a federal collective under the FLSA and state law settlement class under Rule 23, and granting preliminary approval of the settlement agreement).

The ultimate determination of whether a proposed class action settlement warrants approval resides in the court's discretion.  *Protective Comm. For Indep. S'holders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424-25 (1968).

As discussed more fully below, there is clear evidence that the Settlement is fair, adequate and reasonable and well within the range of possible outcomes.  Thus, Final Approval should be granted.

### C.  APPROVAL UNDER FRCP 23

In deciding whether a settlement should be preliminarily approved under Rule 23, courts look to whether there is a basis to believe that the final approval standard will be satisfied.  *See* MANUAL FOURTH at § 21.633, at 321 ("Once the judge is satisfied as to the certifiability of the

class and the results of the initial inquiry into the fairness, reasonableness, and adequacy of the settlement, notice of a formal Rule 23(e) fairness hearing is given to the class members.")  The standard for final approval of a settlement consists of showing that the settlement is fair, reasonable, and adequate.  *Wal-Mart Stores, Inc.* 396 F.3d at 116-117 (2d Cir. 2005).

As set forth below, all the elements of Rule 23[16] are met with respect to the proposed Settlement.  Therefore, class certification for settlement purposes under Rule 23 is warranted here.[17]

### 1.     The Prerequisites of Rule 23(a) Are Satisfied.

To maintain a lawsuit as a class action under Rule 23 of the Federal Rules of Civil Procedure, a named plaintiff must establish each of the four threshold requirements of subsection (a) of the Rule, which provides:

> One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R Civ. P. 23(a).  Here, Plaintiffs contend that all four elements are satisfied.

### a.     *The Class is Sufficiently Numerous.*

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  "Impracticable does not mean impossible."  *Robidoux v.*

---

[16] In December 2018, Rule 23 was amended. Class Counsel has reviewed the amendments and is confident that the settlement, the notice process and the damages allocation formula are in compliance with the revised rule.

[17] See Footnote 7 supra.

*Celani*, 987 F.2d 931, 935 (2d Cir.1993).  Rather, it refers to the burden that would be imposed by joinder. *See Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995); *Noble v. 93 Univ. Place Corp.*, 224 F.R.D. 330, 338 (S.D.N.Y. 2004).  Generally, a potential class of forty members is presumed sufficiently numerous.   *See Consol. Rail Corp.*, 47 F.3d at 483 ("[N]umerosity is presumed at a level of 40 members. . . .").

Numerosity is not in dispute here.  Notice has been sent to more than one thousand (1,000) individuals identified by Defendants.  While joinder of these individuals may not be impossible, it is nonetheless impracticable under the circumstances of this case.  The more efficient use of judicial resources counsels in favor of class certification.  Therefore, the numerosity requirement is met.  *See Riedel*, 2016 WL 3144375, at *3 (numerosity requirement was met where parties asserted that there were approximately 130 class members).

b.    *There Are Common Questions of Law or Fact.*

Rule 23(a)(2) requires that there be "questions of law or fact common to the class."  FED. R. CIV. P. 23(a)(2).  The claims by each individual need not be identical, but there must be common questions of fact or law.  *Port Authority Police Benev. Ass'n, Inc. v. Port Authority of New York and New Jersey*, 698 F.2d 150, 153-54 (2d Cir. 1983); *see also Riedel*, 2016 WL 3144375, at *3 ("Commonality is established where the claims share a common issue of law or fact").  Thus, commonality is established where "the disputed issue of law or fact occupies essentially the same degree of centrality to the named plaintiffs' claims as to that of the other members of the proposed class."  *Chambery v. Tuxedo Junction, Inc.*, 10 F.Supp.3d 415, 420 (W.D.N.Y. 2014) (quoting *Dodge v. County of Orange*, 208 F.R.D. 79, 88 (S.D.N.Y. 2002)).  Courts have generally construed the commonality requirement liberally, requiring only one issue be common to all class members. *See Trief v. Dun & Bradstreet Corp.*, 144 F.R.D. 193, 198-99 (S.D.N.Y. 1992).

19

Here, commonality is met for settlement purposes because the claims of the Class Representatives and those of the Settlement Class are predicated on common issues of alleged fact and law, including but not limited to (1) whether Defendants failed to pay Plaintiffs and the Class Members properly for all the overtime hours they worked, and (2) whether Defendants failed to keep accurate time records of the hours worked by Plaintiffs and the Class Members. *See*, *e.g.*, *Prasker v. Asia Five Eight LLC,* 2010 WL 476009, at *2 (S.D.N.Y. Jan. 6, 2010) (commonality satisfied where Plaintiffs and Class Members share common issues of fact and law, including whether Defendants failed to pay proper overtime pay); *Reyes v. Buddha–Bar NYC*, 2009 WL 5841177, at *2 (S.D.N.Y. May 28, 2009) (same); *Mohney v. Shelly's Prime Steak, Stone Crab & Oyster Bar*, 2009 WL 5851465, at *3 (S.D.N.Y. Mar. 31, 2009) (same); *Castagna v. Madison Square Garden, L.P.*, 2011 WL 2208614, at *3 (S.D.N.Y. June 7, 2011) (same); *Morris v. Affinity Health Plan, Inc.*, 859 F.Supp.2d 611, 615-16 (S.D.N.Y. 2012) (same).

<blockquote>c.    *The Claims Or Defenses Are Typical.*</blockquote>

Rule 23(a)(3) requires that a representative plaintiff's claims or defenses be "typical" of those of other class members.[18]  A representative party establishes typicality when "each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability."  *In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285, 291 (2d Cir. 1992).  Typicality does not require that the "'factual predicate of each claim be identical to that of all class members'; rather, it 'requires that the disputed issue of law or fact'" be considered equally central in both named class representative's claims as it is in the claims of the class members.  *Attenborough v. Const. and Gen. Bldg. Laborers' Local 79*, 238 F.R.D. 82, 94

---

[18] The commonality and typicality requirements of Rule 23(a) "tend to merge." *Gen. Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 157 n. l3 (1982).

(S.D.N.Y. 2006) (quoting *Caridad v. Metro-North Commuter R.R.*, 191 F.3d 283, 293 (2d Cir. 1999)).

Here, typicality is satisfied because all Plaintiffs and Class Members worked on Defendants' productions in the same type of position and allege they were subjected to the same overtime practices. Plaintiffs and Class Members all worked as PPAs on Defendants' productions in the New York metropolitan area (all within the State of New York); were alleged to be subject to the same employment practices; and were alleged to have been denied overtime wages as a result of those practices. Thus, Plaintiffs' claims are "typical" of those in the Settlement Class. Further, the typicality requirement is met because the Plaintiffs' claims arise from an alleged common course of conduct by Defendants in allegedly failing to pay PPAs properly for overtime hours worked, in violation of state law. *See, e.g.*, *Long v. HSBC USA Inc.*, 2015 WL 5444651, at *7 (S.D.N.Y. Sept. 11, 2015) (typicality requirement satisfied where class members "were all employed by defendants[] to do similar work and . . . did not receive overtime pay under the same policy"); *Hernandez v. Merrill Lynch & Co., Inc.*, 2013 WL 1209563, at *3 (S.D.N.Y. Mar. 21, 2013) (typicality satisfied where "[p]laintiffs' [overtime] claims arose from the same factual and legal circumstances that form[ed] the bases of the [c]lass [m]embers' claims"); *Morris*, 859 F.Supp.2d at 616 (same). Thus, for purposes of settlement the Plaintiffs contend that the case each Class Member would present would essentially be the same (hence, commonality) and the Class Representative himself would put on that case (hence, they contend their claims are typical).

        d.    *Class Counsel and The Class Representative Are Adequate.*

The final requirement of Rule 23(a) set forth in subsection (4), requires that "the representative parties will fairly and adequately protect the interests of the class." FED. R. CIV. 23(a). In the Second Circuit, the requirement of adequate representation is met when two factors

are met: (1) class counsel is qualified and able to conduct the proposed litigation, and (2) the class representative must not have interests antagonistic to those of the other class members. *In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d at 291; *Beckman v. KeyBank, N.A., 293* F.R.D. 467, 473 (S.D.N.Y. 2013) (finding adequacy requirement met where there was no evidence that plaintiffs' and class members' interests were at odds); *accord Diaz v. Eastern. Locating Service Inc.,* 2010 WL 5507912, at *3 (S.D.N.Y. Nov. 29, 2010). Here, both factors are satisfied. Plaintiffs' attorneys, proposed Class Counsel, are experienced and competent in complex litigation, specifically including the litigation and settlement of wage and hour cases, and have acted and will continue to act as vigorous advocates for their clients. *See* Kane Decl. ¶ 31 and *See* below Goldberger Factors re Quality of Representation. In addition, the Class Representatives contend that they have no interests antagonistic to the Settlement Class and have demonstrated allegiance to the litigation of the claims and Settlement Class through their patience and active participation in the settlement process on behalf of the Settlement Class.

Having demonstrated that each of the mandatory requirements of Rule 23(a) are satisfied here, Plaintiffs now turn to consideration of the factors which, independently, justify certification of the Settlement Class under subdivision 23(b)(3).

### 2.    The Prerequisites of Rule 23(b)(3) Are Satisfied.

Under Rule 23(b)(3) a class action may be maintained if:

> the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

F ED. R C IV. P. 23(b)(3).

When assessing predominance and superiority, the court may consider that the class will be certified for settlement purposes only. *See Amchem v. Workfit Med. LLC,* 521 U.S. 591, 618-620 (1997).  A showing of manageability of trial is not required. *Id.*  The test is "whether proposed Class are sufficiently cohesive to warrant adjudication by representation."  *Id.* at 623.

        a.     *Common Issues Predominate.*

Although Rule 23(b)(3) requires that common issues of law and fact predominate, it does not require that there be an absence of any individual issues.  Here, "[p]laintiffs' common factual allegations and legal theory—that Defendants violated federal and state wage and hour laws by engaging in a common plan/scheme that resulted in Defendants' failure to pay Plaintiff for overtime hours—predominate over any factual or legal variations among Class Members." *Clem v. Keybank, N.A.,* 2014 WL 2895918, at *3 (S.D.N.Y. June 20, 2014); *See Torres v. Gristede's Corp.,* 2006 WL 2819730, at *16 (S.D.N.Y. Sept. 29, 2006) (plaintiffs "introduced sufficient proof that Defendants engaged in a common practice to deny employees overtime pay [,]" and "[t]his issue predominates over any individual calculations of overtime wages").

Class adjudication and settlement of this case is superior to individual adjudication because it will conserve judicial resources and is more efficient for Class Members, particularly those who lack the resources to bring their claims individually. *See Beckman,* 293 F.R.D. at 473. Concentrating the litigation in this Court is desirable because much of the allegedly wrongful conduct occurred within its jurisdiction.

Plaintiffs are not required to prove that each "elemen[t] of [their] claim [is] susceptible to classwide proof." *Amgen, Inc. v. Connecticut Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1196 (2013) (quotations marks and citations omitted).  The Second Circuit recognizes that the need for

some individualized determinations as to liability and/or damages do not defeat class certification. *See Seijas v. Republic of Argentina*, 606 F.3d 53, 58 (2d Cir. 2010).  To be sure, Rule 23(b)(3) does not require that all questions of law or fact be common.  *See, e.g.*, *Sewell v. Bovis Lend Lease, Inc.*, 2012 WL 1320124, at *5 (S.D.N.Y. Apr. 16, 2012).

Here, all Members of the Settlement Class are unified by common factual allegations—*i.e.*, that Class Members were subjected to the same allegedly unlawful wage and hour policies, which Plaintiffs assert resulted in the non-payment of overtime to PPAs for alleged hours worked over forty in a workweek.  The Class Members are also unified by a common legal theory—*i.e.*, that Defendants' wage and hour policies allegedly violate the FLSA and NYLL.  These common issues predominate over any issues affecting only individual class members.

### b.   *Class Settlement is Superior to Other Methods.*

The superiority requirement is also satisfied. Superiority analyzes whether "the class action device [is] superior to other methods available for a fair and efficient adjudication of the controversy."  *Green v. Wolf Corp.*, 406 F.2d 291, 301 (2d Cir. 1968).  Rule 23(b)(3) sets forth a non-exclusive list of relevant factors, including whether individual class members wish to bring, or have already brought, individual actions; and the desirability of concentrating the litigation of the claims in a particular forum.  Fed. R. Civ. P. 23(b)(3).

Class adjudication and settlement of this case is superior to individual adjudication because it will conserve judicial resources and is more efficient for Class Members, particularly those who lack resources to bring their claims individually.  Furthermore, settling as a group gives Class Members an opportunity to obtain prompt, predictable and certain relief, whereas individualized litigation carries with it great uncertainty, risks and costs.  Class settlement would also relieve judicial burdens that would be caused by adjudication of the same issues in multiple trials.  Finally,

concentrating the litigation in this Court is desirable because the wrongful conduct alleged occurred within this jurisdiction.

Accordingly, Plaintiffs contend that the Settlement Class should be certified under Rule 23(b)(3) for settlement purposes.[19]

### D.   THE SETTLEMENT IS NON-COLLUSIVE, FAIR, ADEQUATE AND REASONABLE

Rule 23(e) requires court approval of a settlement of a class action to insure that it is procedurally and substantively "fair, reasonable and adequate." Fed. R. Civ. P. 23(e). To determine procedural fairness, courts examine the "negotiating process leading to the settlement." *Wal-Mart Stores, Inc.,* 396 F.3d at 116-117; *D'Amato v. Deutsche Bank,* 236 F.3d 78, 85 (2d Cir. 2001).

As delineated above, under Rule 23, before granting final approval of a proposed class action settlement, the Court will be asked to find that the settlement is fair, reasonable and adequate. *See, e.g.*, FED. R. CIV. P. 23(d); *Diaz v. E. Locating Serv. Inc.*, 2010 WL 5507912, at *3 (S.D.N.Y. Nov. 29, 2010). Courts examine procedural and substantive fairness considering the "strong judicial policy favoring settlements" of class action suits. *Wal-Mart Stores, Inc.*, 396 F.3d at 116; *see also Spann v. AOL Time Warner, Inc.*, 2005 WL 1330937, at *6 (S.D.N.Y. June 7, 2005) ("[P]ublic policy favors settlement, especially in the case of class actions.").

#### 1.   Procedural Fairness

"A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Id.* (internal quotations and citations omitted); *see also Riedel*, 2016 WL 3144375, at

---

[19] See Footnote 7 supra.

*7; *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 474 (S.D.N.Y. 2013). "Absent fraud or collusion, [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement" *In re EVCI Career Colls. Holding Corp. Sec. Litig.,* 2007 WL 2230177, at *4 (S.D.N.Y. July 27, 2007); *see also In re Top Tankers, Inc. Sec. Litig.,* 2008 WL 2944620, at *3 (S.D.N.Y. July 31, 2008).

This Settlement was reached as the result of good faith dealings without collusion.  The Parties are represented by highly experienced and competent counsel.  Among Class Counsel are well-respected members of the plaintiffs' bar, with extensive experience in employment law class litigation, specifically wage and hour claims.  *See* Kane Decl. ¶ 31.  Class Counsel have decades of experience in the field of employment discrimination and wage and hour litigation and have prosecuted a substantial number of employment discrimination and wage and hour cases to successful conclusion.

In turn, Morgan, Lewis & Bockius LLP ("MLB"), the lawyers representing Defendants in the case, are nationally known for their labor and employment practice, including the defense of putative class and collective wage and hour claims.

Further, the mediation between the Parties was conducted before Dina R. Jansenson, who is well-versed in the nuances of wage and hour class and collective actions including with hybrid allegations pursuant to both state and federal law.  The Settlement was therefore not the product of collusive dealings but, rather, was informed by the experience of qualified counsel.  The proposed settlement is procedurally fair because it was reached through vigorous, arm's-length negotiations and after experienced counsel had evaluated the merits of Plaintiffs' claims and Defendants' defenses.  *See Toure v. Amerigroup Corp.,* 2012 WL 3240461, at *3 (E.D.N.Y. Aug. 6, 2012) (finding settlement to be "procedurally fair, reasonable,

adequate, and not a product of collusion" after plaintiffs "conducted a thorough investigation ... [and] enlisted the services of an experienced employment [law] mediator"); *Diaz,* 2010 WL 5507912, at *4. *See also McMahon v. Olivier Cheng Catering & Events, LLC,* 2010 WL 2399328, at *4 (S.D.N.Y. Mar. 3, 2010). It meets the *Grinnell* factor of being the product of arms-length negotiations (discussed further below). Thus, this factor strongly supports approval of the Settlement.

### 2. Substantive Fairness

Courts in the Second Circuit "determine whether the settlement's terms are fair, adequate and reasonable per the factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974)." *Diaz*, 2010 WL 5507912, at *3; *see also Riedel*, 2016 WL 3144375, at *7. The "*Grinnell* factors" include, among others: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974) *abrogated by Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43 (2d Cir. 2000).

Here, all the *Grinnell* factors demonstrate that the proposed Settlement is fair, adequate and reasonable, and should thus be approved.

### a. Litigation through Trial Would Be Complex, Costly and Long (*Grinnell* Factor 1)

If approved, this Settlement will dispose of all the claims asserted in the Complaint. In the absence of Settlement approval, the Parties would face the time and expense of reviewing a

voluminous amount of repetitive additional pages of payroll and time records that number in the thousands, numerous depositions of parties and third parties, extended and costly battles with respect to the litigation of the claims, including potential motions for conditional and class certification of the claims, motions for the decertification of any such claims (to the extent any were certified by the Court), and motions for summary judgment on the claims. If summary judgment motions seeking the dismissal of the claims were denied, the Parties would have to conduct additional further discovery and prepare for a trial, which would undoubtedly be lengthy and costly. While Class Counsel and the Plaintiffs believe in the merits of the claims, and would be willing to fight for them, in the absence of the Settlement it would likely have taken many years and millions of dollars in costs, fees and expenses, and consumed scarce judicial resources, before reaching final resolution of the Claims, including exhaustion of all appeals. Class Counsel can readily attest from experience that litigating wage and hour cases can be time consuming, fraught with issues and expensive.

Accordingly, by reaching a settlement prior to such litigation, Plaintiffs seek to avoid significant expense and delay, and instead ensure timely recovery for members of the Settlement Class who become Participating Claimants. *In re Prudential Ins. Co. America Sales Litigation*, 148 F.3d 283, 318 (3d Cir. 1998) (settlement favored where "trial of this class action would be a long, arduous process requiring great expenditures of time and money on behalf of both the parties and the court"). The first *Grinnell* factor weighs in favor of final judicial approval of the Settlement.

### b. Class Reaction Has Been Very Positive (*Grinnell* Factor 2).

The response to the Settlement by members of the Settlement Class is an important factor in evaluating the fairness, reasonableness and adequacy of the Settlement. *In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 72 (D.Mass. 2005) (class's reaction supported approval where the "overall

reaction to the settlement has been positive" and the objections asserted by class members did not focus upon the total settlement consideration).   Similarly, the lack of exclusions/objections implicitly provides this Court with further evidence of positive Class reaction. "As to factor two, [the Court] concluded that the class implicitly approved the settlement, observing that "[t]here have been under the circumstances few exclusions and few objections." *In re Elec. Books Antitrust Litig.,* 639 F.Appx. 724, 727 (2d Cir. 2016).

Consideration of the reaction of members of the Settlement Class weighs strongly in favor of approval where, as here, there have been no objections received from Members of the Settlement Class in response to the Notice that was mailed (and in some instances re-mailed).   In addition, the Notice advised Members of the Settlement Class of their right to exclude themselves from the Settlement.   No requests for exclusion were received by JND from Members of the Settlement Class. JND decl. ¶ 17.

Moreover, the percentage of Class Members who elected to participate in the Settlement – approximately 57% – is well above the rate approved in other cases and the typical rate in FLSA cases.   *See, e.g., Acevedo v. Workfit Med. LLC,* 187 F.Supp.3d 370, 380 (W.D.N.Y. 2016) (approving settlement with 21% claim rate); *citing to Sylvester v. CIGNA Corp.*, 369 F.Supp.2d 34, 52 (D.Me. 2005); *See also Velez v. Novartis Pharms. Corp.*, 2010 WL 4877852, at *6 (S.D.N.Y. Nov. 30, 2010) (approving 7% rate).   In Charlotte S. Alexander's law review article ("Alexander Study"), data was gathered on the opt-in rates in 38 FLSA collective actions.   Plaintiff opt-in rates were at a median of 15%, with thirty of the thirty eight cases having opt-in rates below 20%. *Would an Opt In Requirement Fix the Class Action Settlement? Evidence from the Fair Labor Standards Act* 80:2 MISS.L.J. 443, at 489-91 (Winter 2010); *See also* Andrew C. Brunsden, *Hybrid Class Actions, Dual Certification, and Wage Law Enforcement in the Federal*

*Courts*, 29 Berkeley J. Emp. & Lab. L. 269, 291–94 (2008) (surveying 21 opt-in FLSA cases and finding average participation rate to be 15.71%). In comparison, here, approximately 57% of the Settlement Class submitted claim forms.

This response demonstrates that the Members of the Settlement Class approve the terms of the Settlement, including the results achieved on their behalf, and support final judicial approval.

### c. The Stage of the Proceedings and the Amount of Discovery Completed Support Final Approval (*Grinnell* Factor 3).

The purpose of considering the stage of the proceedings when evaluating a settlement for final approval is to ensure that the factual record is sufficient to support an informed judgment as to the adequacy of the settlement proposal. When evaluating the level of discovery completed, "[t]he pertinent question is whether counsel had an adequate appreciation of the merits of the case before negotiating." *Prasker v. Asia Five Eight LLC,* 2010 WL 476009 at *5 (S.D.N.Y. Jan. 6, 2010); *Mills v. Capital One, N.A.*, 2015 WL 5730008, at *5 (S.D.N.Y. Sept. 30, 2015).

Here, there can be no question that the Plaintiffs and Class Counsel had sufficient information to make an informed decision regarding the adequacy of the Settlement. Extensive informal discovery was exchanged in connection with the analysis, valuation, and settlement of the claims, and over one hundred witnesses were interviewed by Class Counsel regarding the claims. Due to the difficulty in determining the identity of the employers, extensive discovery, investigation and discussions were held regarding the proper parties to be named as defendants. Navigating the relationships between the defendants was a complex and time consuming effort. In addition, given respective counsels' experience, the Parties knew what documents were required to fully evaluate the claims, which allowed counsel to hone in on the

exact discovery needed to have full, fair and frank settlement conversations.  Kane Decl. ¶¶ 9-12.

Moreover, both Parties had information about the size of the potential Settlement Class, the scope of the Plaintiffs' employment and other information, including details regarding the "shooting"/production schedules, persons involved in scheduling Plaintiffs' hours, how communications with Plaintiffs were accomplished, and policies and practices regarding payroll which was processed by third party entities.  Kane Decl. ¶ 8. Furthermore, in this matter, unlike many collective and class actions, Class Counsel met with and interviewed hundreds of potential class members **prior** to the Notice being sent out pursuant to the Preliminary Approval Order.  As a result, Class Counsel have a thorough understanding of Plaintiffs' claims. *Id*.

Both sides conducted their own analysis regarding the: (1) potential liability if the claims were to proceed; (2) relative strengths and weaknesses of the claims and defenses; and (3) risks associated with each side's respective positions.  Kane Decl. ¶ 7.  The negotiations involved an exchange of both in-person and telephonic discussions and negotiations.  Matters addressed included the size and scope of the claims and the class, the likelihood of success on the merits, the manner in which alleged damages associated with those claims could be calculated and obtained, and the likelihood of preliminary approval, the breadth and accuracy of the data needed for proper assessment of the claims, individual versus class considerations, statute of limitations arguments, and the likelihood of trial and what would occur at trial.  Kane Decl. ¶ 13.

In short, the combination of investigation, exchange of information and inquiry permitted Class Counsel to get to the heart of the issues in the case in an effective and efficient manner.  Accordingly, the Parties' exchange of information more than meets the standard of

31

being part of "an aggressive effort" to litigate the case and Class Counsel were fully equipped to evaluate the strengths and weaknesses of the claims. *See Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 185 (W.D.N.Y. 2005) (approving settlement of case "in relatively early stages of discovery" where parties had exchanged extensive information pertaining to the identities of class members and to Defendant's time and pay practices and where counsels' negotiations, while "cooperative," had "been in no way collusive"). Moreover, "[c]ourts encourage early settlement of class actions, when warranted, because early settlement allows class members to recover without unnecessary delay and allows the judicial system to focus resources elsewhere." *Yuzary v. HSBC Bank USA, N.A.,* 2013 WL 5492998, at *5 (S.D.N.Y. Oct. 2, 2013); *Castagna v. Madison Square Garden, L.P.,* 2011 WL 2208614, at *10 (S.D.N.Y. Jun. 7, 2011) (commending Plaintiffs' attorneys for negotiating early settlement). *See also In re Interpublic Sec. Litig.,* 2004 WL 2397190, at *12 (S.D.N.Y. Oct. 26, 2004).

### d.   Plaintiffs Would Face Real Risks In Seeking To Establish Liability and Damages if the Lawsuit Was to Proceed (*Grinnell* Factors 4 and 5).

The risk of establishing liability and damages further weighs in favor of final approval. "Litigation inherently involves risks." *Clem v. Keybank, N.A.*, 2014 WL 2895918, at *6 (S.D.N.Y. June 20, 2014). Indeed, "[i]f settlement has any purpose at all, it is to avoid a trial on the merits because of the uncertainty of the outcome." *In re Ira Haupt & Co.,* 304 F.Supp. 917, 934 (S.D.N.Y. 1969); *see also Velez v. Majik Cleaning Serv., Inc.,* 2007 WL 7232783, at *6 (S.D.N.Y. June 25, 2007). Although the Plaintiffs believe they have strong claims, they are subject to tangible risks as to liability and damages.

First, a trial on the merits would involve risk to the Plaintiffs because of the fact-intensive nature of proving liability and damages on their claims under the FLSA and NYLL. Some of the disputed issues are: (1) was defendants' method of calculating overall pay legal, such that there was no

liability under the FLSA and NYLL, (2) were Plaintiffs employees of various production companies, employees of other judgment proof entities, or even independent contractors, (3) because the pay practices were allegedly vetted by two nationally recognized payroll companies was there any willfulness to violate the law, (4) were the hours indicated in the payroll data somehow inflated and therefore erroneous, and (5) whether Defendants' alleged payroll practices challenged in the Complaint were modified.

Second, even if liability could be established, the Parties dispute the proper method for calculating potential damages in an action like this one. *See McCoy v. Health Net, Inc.*, 569 F.Supp.2d 448, 462 (D.N.J. 2008) (that parties "insisted on vastly different methodologies for determining damages" counseled in favor of settlement). Here, Defendants asserted that the damage analysis to be applied was the half-rate method (at most) and not time and one-half as alleged by Plaintiffs. Defendants also alleged that any calculation should be based on the hourly rates paid (not the rates claimed), and that any amounts allegedly due be offset by the daily overtime payments made, which are not required by the NYLL or the FLSA.

Although the Plaintiffs believe that the Claims are meritorious, Class Counsel are experienced and realistic, and understand that the resolution of liability and damages issues, the outcome of a potential trial, and the inevitable appeals process are inherently uncertain in terms of outcome and duration. The Settlement alleviates this uncertainty.

### e. Obtaining Class or Collective Certification and Maintaining That Certification Through Trial May Be Difficult (*Grinnell* Factor 6).

The risks to the Plaintiffs of first obtaining, and then maintaining, either conditional certification of an FLSA collective or the certification of a Rule 23 state law class through trial are also present. With respect to FLSA conditional certification issues, while Class Counsel contends that the bar for certification is low (a point that Defendants would readily dispute), the Plaintiffs

would have had to move for conditional certification of the claims under Section 216(b) of the FLSA and, even if conditional certification was granted, later survive a motion by Defendants to decertify such an FLSA collective after an additional, second phase of discovery. In addition, with respect to Rule 23 certification issues, the Plaintiffs would have to move for class certification for the NYLL Class and, even if class certification was granted, would later have to also survive a motion by Defendants to decertify such a class.

Irrespective of how motions for conditional certification, class certification, or decertification might be decided, Class Counsel are well aware from experience that decertification/final certification determinations would be reached only after substantial discovery, and intense/exhaustive briefing and argument by both sides. Yet further, the possibility of Defendants seeking permission to file an interlocutory appeal under Fed. R. Civ. P. 23(f), should a class be certified under Rule 23, is always present. Risk, expense, and delay permeate continued litigation. Settlement eliminates this risk, expense, and delay. This factor favors granting final approval.

### f. The Settlement Amount Is Reasonable, Even in Light of the Best Possible Recovery, Given the Risks of Litigation (*Grinnell* Factors 7, 8 and 9).

In the light of Class Counsel's assessment of the best possible recovery, given the attendant risks, the Settlement is fair, reasonable and adequate. A reasonable settlement is not determined by a hard and fast mathematical equation yielding a particularized sum. *Frank,* 228 F.R.D. at 186 (quoting *In re Austrian,* 80 F. Supp. 2d at 178). "Instead, there is a range of reasonableness with respect to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.'" *Id.* (quoting *Newman v. Stein,* 464 F.2d 689,693 (2d Cir. 1972)). *See Diaz*, 2010 WL 5507912, at *5 (finding that settlement was within range of reasonableness given various

challenges, risks and costs continued litigation would entail); *Lizondro-Garcia v. Kefi LLC*, 300 F.R.D. 169, 180 (S.D.N.Y. 2014) (explaining that "the [settlement] award compensates plaintiffs almost immediately and removes the uncertainty that litigation necessarily entails").  Thus, this factor weighs in favor of approving the Settlement.

Courts routinely approve settlements even though the benefits amount to less than the recovery sought (or else there would have been no reason to settle).  Moreover, when a settlement assures immediate payment of substantial amounts to Class Members, "even if it means sacrificing speculative payment of a hypothetically larger amount years down the road[,]" settlement is reasonable under this factor. *Charron v. Pinnacle Group N.Y. LLC*, 874 F.Supp.2d 179, 201 (S.D.N.Y. 2012), *affd sub nom. Charron v. Wiener*, 731 F.3d 241 (2d Cir. 2013).

As the seminal *Grinnell* decision itself recognized, "there is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery."  *Grinnell*, 495 F.2d at 455 n.2; *accord, e.g., Weinberger v. Kendrick*, 698 F.2d 61, 65 (2d Cir. 1982) (upholding settlement which amounted to "only a negligible percentage of the losses suffered by the class").  "It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery will not *per se* render the settlement inadequate or unfair." *Officers for Justice v. Civil Service Comm'n of the City and County of San Francisco*, 688 F.2d 615, 628 (9th Cir. 1982).  When settlement assures immediate payment of substantial amounts to class members, "even if it means sacrificing 'speculative payment of hypothetically larger amount years down the road,'" such settlements should be found reasonable under this factor. *See Gilliam v. Addicts Rehab. Ctr. Fund,* 2008 U.S. Dist. LEXIS 23016, at *13 (S.D.N.Y. Mar. 24, 2008) (*quoting Teachers' Ret. Sys. of Louisiana v.*

*A.C.L.N. Ltd.*, 2004 U.S. Dist. LEXIS 8608, at *16 (S.D.N.Y. May 14, 2004)).  Even if a defendant could withstand a greater judgment, a "defendant's ability to withstand a greater judgment, standing alone, does not suggest that the settlement is unfair." *Frank*, 228 F.R.D. at 186.

Here, Class Counsel and the Plaintiffs believe that the Gross Settlement Amount is far more than a fraction of alleged damages and more than reasonable given the attendant risks of litigating the claims, even though recovery could possibly be greater if the Plaintiffs were to fully succeed on their claims at trial and survive an appeal.  Further, Class Counsel negotiated an amount for attorney fees as an additional sum incorporated into the common fund after obtaining significant recovery of each Class Member's actual damages.

Class Counsel believes that the fairness and reasonableness of the Settlement can be best understood, however, by considering that the Gross Settlement Amount Nine Million Nine Hundred Seventy-Seven Thousand Five Hundred Two Dollars and Zero Cents ($9,977,502.00) plus interest, achieves payment of 100% of the Participating Claimants' alleged unpaid wages, and the equivalent of 53% of their liquidated damages *after* attorneys' fees and costs.  In comparison to other FLSA/NYLL settlements, this settlement is an outstanding result.  *See Hyun v. Ippudo USA Holdings,* 2016 WL 1222347  at *2 (S.D.N.Y. Mar. 24, 2016) (Court approves Class members receiving approximately 51% of their back wages as fair and reasonable, "based on the immediacy of payment with a cash settlement and the litigation risks associated with proceeding to trial"); *Manley v. Midan Rest. Inc.*, 2016 WL 1274577, at *9 (S.D.N.Y. Mar. 30, 2016) (holding that, "after deducting the service award, fees for the settlement claims administrator and attorneys' fees and costs, the class members will receive approximately $577,833.33, which is more than 85% of their back wages.  This substantial recovery weighs in favor of approving the settlement.").

The claims made process allows for a portion of the Unclaimed Funds to be distributed on a pro rata basis among the Participating Claimants and a portion to remain with Defendants. Distribution of the Unclaimed Funds, however, is dependent on the participation rate.[20] Thus, as set forth herein, the percentages of recovery could have increased for the Participating Claimants. The portion remaining with Defendants ensures there is not a windfall to Participating Claimants and reimburses Defendants for the costs associated with investigating and implementing the non-economic measures taken in response to the settlement of the claims[21].

In concluding that the Settlement is fair, reasonable and adequate, Class Counsel also weighed the benefits against the risk involved in litigation. *Cf. Cagan v. Anchor Sav. Bank FSB*, 1990 U.S. Dist. LEXIS 11450, at **34-35 (E.D.N.Y. May 17, 1990) (approving $2.3 million class settlement over objections that the "best possible recovery would be approximately $121 million"); *Brooks v. Am. Export Indus., Inc.*, 1977 U.S. Dist. LEXIS 17313, at **16-18 (S.D.N.Y. Feb. 17, 1977) (approving settlement of less than 1% of the best possible recovery). [22]

---

[20] The claims-made, reversionary structure of this proposed Settlement is particularly proper (if not uniquely so) for the settlement of FLSA claims given that, in a putative FLSA collective action, a putative FLSA collective action member must affirmatively "opt-in" to the FLSA action in order to participate in the litigation. As a result, in an FLSA settlement, a member of a FLSA settlement collective (or "settlement class" as the term has been used in the instant action) who does not affirmatively consent to join the case and to participate in the settlement will retain FLSA claims against the Defendants, including the right to file a separate lawsuit against Defendants, even after the resolution of the case on a classwide basis. *See* 29 U.S.C. § 216(b). In the proposed Settlement, anyone who has not submitted a Claim Form and therefore does not become a Participating Claimant will not be eligible to participate in the settlement and will retain the right to sue Defendants for alleged FLSA violations. The settlement structure proposed here achieves a balance between providing fair settlement compensation to participating class members, while protecting Defendants in the event it needs to defend unreleased FLSA claims from members of the Settlement Class who did not become Participating Claimants. Where, as here, provisions for funding the claims of the participating members of the Settlement Class are negotiated at arms-length, they "[do] not undermine the fairness, reasonableness, or adequacy of the Settlement." *McCoy v. Health Net, Inc.*, 569 F.Supp.2d 448, 474 (D.N.J. 2008).
[21] As this brief is written, it appears that the participation rate will be at least 57% and therefore, it is likely that the unclaimed funds will remain with Defendants.
[22] Plaintiffs also recognize the substantial hurdles they face to recover these sums in the absence of a settlement. Defendants argue that their pay practices complied with applicable law. Thus, Defendants sharply contest each of Plaintiffs' claims including their claims for overtime and under the Wage Theft Prevention Act ("WTPA") of the NYLL. Defendants' further dispute Plaintiffs' calculation of the applicable statutes of limitation, and Plaintiffs' allegations that Defendants willfully violated applicable law. It is also Defendants' position that individualized issues preclude class or collective certification of the Class. Further, Plaintiffs' acknowledge that penalties under the WTPA

37

Accordingly, Plaintiffs submit that the Settlement is fair, reasonable and adequate, particularly in light of these risks and challenges.

The *Grinnell* factors, as well as the additional factors, all weigh in favor of granting final approval of the Settlement. Thus, the Settlement is fair, reasonable, and adequate, and the Court should grant final approval.

### E.  APPROVAL OF THE FLSA SETTLEMENT

Because a collective action under the FLSA requires individuals to opt in before they are bound (rather than opt out in order not to be bound, as in the Rule 23 class action context), "settlement of a collective action does not implicate the same due process concerns as the settlement of a class action," and therefore is subject to less searching scrutiny. *Lizondro-Garcia v. Kefi LLC*, 300 F.R.D. 169, 179 (S.D.N.Y. 2014). In most cases, a settlement that meets the standards of Rule 23 will also "reflect a fair and reasonable compromise of disputed issues" under the FLSA. *Id*. The Court should "therefore focus on the standards of Rule 23" when deciding whether to approve, as here, a hybrid class and collective settlement agreement. *Riedel,* 2016 WL 3144375, at *6.

As this Settlement meets the requirements of Rule 23(e) as well as the *Grinnell* Factors, it should also be approved as to the FLSA collective.

### V.      REQUESTS FOR AN AWARD OF ATTORNEYS' FEES, COSTS, AND EXPENSES; SERVICE AWARDS; AND ADMINISTRATION FEES SHOULD BE APPROVED

### A.  ATTORNEYS' FEES, COSTS, AND EXPENSES

In assessing a request for attorneys' fees (Rule 23(g) requires the court to consider

---

are arguably only available to a Class Member working over 3.34 shifts in a week. Defendants vigorously dispute that the WTPA was violated and put virtually no value on the assessable penalties.

"the work counsel has done in identifying or investigating potential claims in the action, . . . counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action,  . . . counsel's knowledge of the applicable law, and ... the resources counsel will commit to representing the class."). *Damassia v. Duane Reade, Inc.,* 250 F.R.D. 152, 165 (S.D.N.Y. 2008) (internal quotation marks omitted); Federal Rule of Civil Procedure 23(g).

Class Counsel posit that they are entitled to reasonable attorneys' fees, costs and expenses to compensate them for their work in recovering alleged unpaid wages on behalf of the Members of the Settlement Class.  Pursuant to Fed. R. Civ. P. 23(h) and 54(d)(2), Class Counsel seek an award of attorneys' fees, costs and expenses in the amount of $3,325,834.00, or slightly less than one-third (1/3) of the Gross Settlement Amount after the addition of interest.  Kane Decl. ¶33.  For the purposes of this Motion only, Defendants do not oppose Class Counsel's application for attorneys' fees, costs and expenses.[23]  The Notice advising members of the Settlement Class of the Settlement, which was approved by the Court, provided that "Class Counsel will apply for fees, costs and expenses in an amount not to exceed 1/3 of the Gross Settlement Amount." *See* JND Decl. Exhibit B (Notice) annexed to Kane Decl. as Exhibit 2. Not a single objection was received to Class Counsel's request for attorneys' fees, costs and expenses.  Class Counsel contends that this request for just under one-third (1/3) of the Gross Settlement Amount for attorneys' fees, costs and expenses is reasonable and is within the accepted range typically awarded in contingency fee common fund and FLSA cases (*see* below).

---

[23] For settlement purposes only, Defendants do not oppose Class Counsel's instant request for attorneys' fees, costs and expenses.  However, to the extent that the Court does not grant final approval of the Settlement, Defendants reserve their rights to raise any argument with respect to any subsequent requests by Class Counsel for attorneys' fees, costs and expenses in association with any claims asserted by any Plaintiffs in this action.

The trend in this Circuit is to use the percentage of the fund method in common fund cases like this one. *Wal-Mart Stores,* 396 F.3d at 121; *Yuzary,* 2013 WL 5492998, at *9; *Diaz,* 2010 WL 5507912, at *7.  Although the Court has discretion to award attorneys' fees based on the lodestar method or the percentage-of-recovery method, in wage and hour class action lawsuits, public policy favors a common fund attorneys' fee award, *Beckman,* 293 F.R.D. 477; *McMahon,* 2010 WL 2399328, at *7.  *McDaniel v. County of Schenectady,* 595 F.3d 411, 417 (2d Cir. 2010).  "The lodestar creates an unanticipated disincentive to early settlements, tempts lawyers to run up their hours and compels district courts to engage in a gimlet-eyed review of line-item fee audits." *Wal-Mart Stores,* 396 F.3d at 121.

"'An attorney who recovers a common fund for the benefit of others is entitled to 'a reasonable attorney's fee from the fund as a whole.'" *In re Tyco International MDL Litigation,* 535 F.Supp.2d 249, 265 (D.N.H. 2007) (*quoting Boeing Co. v. Van Gemert,* 444 U.S. 472, 478, (1980)); *see also Blum v. Stenson,* 465 U.S. 886, 900 n.16 (1984) (stating that in common fund cases "a reasonable fee is based on a percentage of the fund bestowed on the class").  And a lack of full participation should not have a negative impact on the Attorney Fee application.  *See Grinell* Factor 2 above.[24]

Yet another advantage of the percentage method is that it "directly aligns the interests of the class and its counsel" because it incentivizes attorneys to create the largest common fund out

---

[24] As the Supreme Court has recognized, it is appropriate that attorneys' fees, costs and expenses be awarded on the entire settlement even though amounts to be paid to settlement class members who do not file claims will revert to Defendants.  *See Boeing Co.,* 444 U.S. at 480-81.

of which payments to the class can be made.  *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 122 (2d Cir. 2005) (internal citations omitted).[25]

There is no hard and fast rule mandating a certain percentage of a common fund that may reasonably be awarded as a fee.  The amount of any fee must be determined on the facts of each case.  "It is not the obligation of this court to set the fee at the lowest amount possible but rather to determine whether the fees sought are 'reasonable.'"  *In re Volkswagen*, 784 F.Supp.2d 35, 47 (D.Mass. 2011).

Class Counsel's request for one-third (1/3) of the Gross Settlement Amount (without the additional interest) for Class Counsel's attorneys' fees, costs and expenses falls within the acceptable range for common fund cases in this Circuit, both within the wage and hour context as well as otherwise.  Indeed, an attorneys' fee award of one-third of the fund "is the customary percentage in FLSA cases."  *Garcia v. Atlantico Bakery Corp.*, 2016 WL 3636659 (S.D.N.Y. June 29, 2016) (collecting cases); *see also Clem v. Keybank, N.A.*, 2014 WL 2895918, at *9 (S.D.N.Y. June 20, 2014) ("Class Counsel's request for 33% of the [$3,500,000] fund is reasonable and consistent with the norms of class litigation in this circuit.") (internal quotations and citations

---

[25] Indeed, in perhaps the most recent serious consideration of current fee jurisprudence, found in the American Law Institute's recently adopted Principles of Aggregate Litigation, the percentage-of-the fund was recognized as the proper principle:

        (b) Subject to subsection (c), a percentage-of-the-fund approach should be the method utilized in most common-fund cases, with the percentage being based on both the monetary and nonmonetary value of the judgment or settlement.  The court can consider using the "lodestar" approach as a cross-check, particularly when the value of the judgment or settlement is uncertain.

        (c) Other than its use as a cross-check, or its use in cases seeking solely injunctive or declaratory relief, the lodestar method should be limited to:

         (1) situations in which the fees will be awarded under a fee-shifting statute that requires the lodestar method, or

         (2) cases in which the court makes a specific finding that the percentage method would be unfair or inapplicable based on the specific facts of the case.

American Law Institute, *Principles of the Law of Aggregate Litigation* § 3.13(b), (c) at 248-49 (2010).

omitted).[26]  Here, Class Counsel believes that all considerations support the requested amount for attorneys' fees, costs and expenses.

Though *Goldberger v. Integrated Resources, Inc.,* 209 F.3d 43, 50 (2d Cir. 2000) did not involve an FLSA claim, the Second Circuit set forth the following six factors to determine the reasonableness of a fee application in that securities class action: "(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations."  Should the Court consider these factors, all support the award requested herein.

### 1.  The time and labor expended by counsel

Class Counsel have expended significant resources litigating the Action.  Counsel spent significant time investigating the claims and Defendants' defenses, assessing viable parties, meeting with and interviewing many potentially impacted individuals, collecting hundreds of pages of data from Class Members and Defendants, reviewing the relevant merits and damages data, filing consents to join, determining damages, preparing for and attending mediation, negotiating a settlement, and resolving extensive disputes pertaining to the specifics included in the Settlement Agreement, and assisting with the administration of the class before, during and

---

[26] *See also Davis v. JP Morgan Chase & Co.*, No. 01-CV-6492L, slip op (S.D.N.Y. Oct. 11, 2011) (one third of $42 million settlement fund in FLSA and state wage and hour case). *Rangel v. 639 Grand St. Meat & Produce Corp.*, 2013 WL 5308277 at *1 (E.D.N.Y. Sept. 19, 2013) (approving attorneys' fees of one-third of FLSA settlement amount, plus costs, pursuant to plaintiff's retainer agreement, and noting that such a fee arrangement "is routinely approved by the courts in this Circuit"); *Febus v. Guardian First Funding Group, LLC*, 870 F.Supp.2d 337, 340-41 (S.D.N.Y. 2012) (Stein, D.J.)("a fee that is one-third of the fund is typical" in FLSA cases); *accord Calle v. Elite Specialty Coatings Plus, Inc.*, 2014 WL 6621081, at *3(E.D.N.Y. Nov. 21, 2014); *Meza v. 317 Amsterdam Corp.*, 2015 WL 9161791, at *2 (S.D.N.Y. Dec 14, 2015) ("[C]ourts regularly approve attorney's fees of one-third of the settlement amount in FLSA cases.") (collecting cases).

after the notice period by fielding numerous inquiries of opt-ins and potential participants in the settlement process and working to ensure that deficiencies in certain PPA class member claims (ie: Identification) are resolved so that all eligible Class Members who timely submit a Claim Form in this action are permitted to particpate in the settlement.  Further, significant time was spent by Class Counsel negotiating the scope of the settlement.[27] Kane Decl. ¶ 10.

From 2015 to date, Class Counsel have collectively spent approximately 1,283.55 attorney, paralegal and support staff hours investigating and prosecuting this case.  These hours have an aggregate lodestar of approximately $582,741.50  Such hours are reasonable in the instant case, particularly given the size of the Class, Class Counsel's contact with the Class, and the magnitude of and management of the discovery necessary to establish Plaintiffs' claims.  All hours are based on contemporaneous time records maintained by each attorney, paralegal, and support staff participating in the case.   Class Counsel's efforts have been without compensation to date and entitlement to payment was contingent upon achieving a successful result.

Further, after Class Counsel spends additional time on this litigation in connection with implementing and monitoring the settlement, their lodestar will increase. *Sewell*, 2012 WL 1320124, at *13; *Beckman*, 293 F.R.D. at 482. Among other things, and particularly because of the numerous early opt-ins in this case, Class Counsel will continue to answer class member questions, respond to inquiries from the claims administrator, and negotiate and possibly litigate disagreements with Defendants about the administration of the settlement and distribution of the fund. This additional work makes Class Counsel's request "even more reasonable than it appears at first glance." *Beckman*, 293 F.R.D. at 482.  *Reyes v. Altamarea Grp., LLC*, 2011 WL 4599822,

---

[27] Class Counsel have closely reviewed their time records, carefully including only time spent on efforts directed toward the claims in the Complaint.  Where time was spent on tasks benefitting all the cases as a whole, Class Counsel only included a percentage of their time.

*8 (S.D.N.Y. Aug. 16, 2011) (In approving 33% attorney fee award in FLSA case, Court noted that "[t]he fact that Class Counsel's fee award will not only compensate them for time and effort already expended, but for time that they will be required to spend administering the settlement going forward also supports their fee request.")

### 2.   The magnitude and complexities of the litigation

The United States Supreme Court has long recognized that "FLSA claims typically involve complex mixed questions of fact and law[.]  These statutory questions must be resolved in light of volumes of legislative history and over four decades of legal interpretation and administrative rulings."  *Barrentine v. Arkansas-Best Freight Systems, Inc.*, 450 U.S. 728, 743 (1981).

The claims herein had all the hallmarks of complex and extended FLSA and state law litigation.  The risks of proceeding with this case have been set out above, but for emphasis include Plaintiffs having to establish that: Defendants jointly or otherwise employed Plaintiffs within the meaning of the FLSA and NYLL; Plaintiffs were not properly compensated for all hours worked; Plaintiffs did not receive compliant wage notice and wage statements under the NYLL; and class and collective action treatment of Plaintiffs' claims is appropriate, particularly given that payroll practices and personnel differed from production to production and even by season for the same production. Kane Decl. ¶ 23.

This settlement involved over 1,000 Class Members. As such, case and client management was a complex and time-consuming endeavor. These factors all weigh in favor of reasonableness of the requested fee.

### 3.   The risk of the litigation

Class Counsel undertook to prosecute this action without any guarantee of payment and litigated on a contingent basis.  Class Counsel was required to make a significant investment of time and resources without a guarantee of any kind.  The facts and circumstances of this case

presented numerous and substantial hurdles to a successful recovery of unpaid wages.  If the case went to trial, Plaintiffs would also have to prove that Defendants pay practices violated the FLSA and NYLL rules regarding the payment of overtime.  Accordingly, the risk of litigation and collection weigh heavily in favor of Class Counsel's request for attorneys' fees.

### 4.   The quality of representation

"To determine the 'quality of the representation,' courts review, among other things, the recovery obtained and the backgrounds of the lawyers involved in the lawsuit." *Taft v. Ackermans*, 2007 U.S. Dist. LEXIS 9144, at *31 (S.D.N.Y. Jan. 31, 2007) (citing *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 467 (S.D.N.Y. 2004)).  This case was staffed by lawyers with decades of experience in employment law and litigation.   Indeed, Class Counsel respectively submit that the $9,977,502.00 Gross Settlement Amount was achieved, in part, because of the level of experience and reputation of counsel.  *See, e.g.*, *Kudo v. Panda Express*, 7:09-cv-00712, Dkt. 308 at 5-6 (S.D.N.Y. June 26, 2015) (appointing Valli Kane & Vagnini, among others, as class counsel for settlement class recognizing how they "have succeeded in negotiating an award that has real value for the class members"); *Indergit v. Rite Aid,* 293 F.R.D. 632, 654 (S.D.N.Y. 2013) (certifying settlement class of store managers and naming Valli Kane & Vagnini, among others, as class counsel, finding "it is clear that counsel is qualified"); *Brown et. al v. Medicis* 13-cv-01345, Dkt. 52 at 4 (DOC, July 11, 2016) (granting final approval of $7,150,000 settlement in gender discrimination and hostile work environment case, stating that Class Representatives have "hired counsel experienced in litigating employment discrimination class actions" in referring to Valli Kane & Vagnini and their co-counsel when approving 35% plus reimbursement of all reasonable costs, plus expenses and an additional $150,000 payment for fees for work associated with implementing the Settlement Agreement); *Roberts et. al. v. TJX,* 13-cv-13142, Dkt. No. 172 at 6 (D. Mass. 9/30/16) (Judge Burroughs in approving wage and hour settlement for a portion of

the complaint, in referring to Valli Kane & Vagnini and co-counsel stated, "the Court is satisfied that the terms and conditions set forth in the Settlement Agreement are the result of good faith, arms' length settlement negotiations between competent and experienced counsel…").

Defendants, in turn, were ably represented by a prominent law firm and attorneys with specific experience and well-known expertise in this type of litigation. "The quality of opposing counsel is also important in evaluating the quality of the services rendered by Plaintiffs' Class Counsel." *Maley v. Dale Global Techs. Corp.,* 186 F.Supp.2d 358, 373 (S.D.N.Y. 2002). Thus, this factor weighs in favor of granting the requested fee.

### 5. The requested fee in relation to the settlement

The request by Class Counsel for an award of slightly less than one-third (1/3) of the Gross Settlement Amount for fees, costs and expenses is fully supported by awards in class actions involving common funds, including, specifically, wage and hour class and collective action settlements.

Contingency fees of one third in FLSA cases are routinely approved in this Circuit. Although *Arbor Hill Concerned Citizens Neighborhood Association v. County of Albany,* 522 F.3d 182 (2nd Cir. 2008), does not address a common fund fee petition, it supports Class Counsel's request for one third of the fund because "'reasonable, paying client[s]' ... typically pay one-third of their recoveries under private retainer agreements." *See also Reyes v. Altamarea Grp., LLC*, 2011 WL 4599822, at *8 (S.D.N.Y., Aug. 16, 2011).

No Class Member objected to Class Counsel's request for 1/3 of the Gross Settlement Amount, which also provides support for Class Counsel's fee request.

Additionally, here Class Counsel are not seeking their costs in addition to the almost 1/3 sought in attorney's fees. Courts typically allow counsel to recover their reasonable out-of-pocket

expenses. *See In re Indep. Energy Holdings PLC Sec. Litig.,* 302 F.Supp.2d 180, 183 n.3 (S.D.N.Y. 2003).   Here, Class Counsel's unreimbursed expenses, including court and process server fees, mediation fees, postage and courier fees, transportation, working meals, photocopies, electronic research, are reasonable and were incidental and necessary to the representation of the class and are incorporated into the fee requested.

Moreover, Class Counsel negotiated an amount for attorney fees as an additional sum incorporated into the common fund after obtaining significant recovery of each class member's actual damages.  As a result, the recovery for the entire class equates to the value of 100% of their overtime damages and the equivalent of 53% of their liquidated damages after attorneys' fees, administration costs and service awards.  Thus, Class Counsel's request for slightly less than 1/3 of the Gross Settlement Amount is reasonable and "consistent with the norms of class litigation in this circuit." *Yuzary,* 2013 WL 5492998, at *10 (internal quotation marks and citation omitted). After fees are granted the settlement remains "fair, adequate and reasonable." *See Grinnell.*  Thus, this significant recovery for the Class justifies awarding Class Counsel the fees requested.

### 6.  Public policy considerations

"[F]ee awards in wage and hour cases are meant to encourage members of the bar to provide legal services to those whose wage claims might otherwise be too small to justify the retention of able, legal counsel." *Hernandez,* 2013 WL 1209563, at *8 (internal quotation marks and citation omitted). The FLSA and its state law analogs are remedial statutes designed to protect the wages of workers.  *See A.H. Phillips v. Walling,* 324 U.S. 490, 493 (1945) (recognizing the FLSA's objective, which is ensuring that every employee receives "a fair day's pay for a fair day's work"), the purposes of which are served by adequately compensating

attorneys who protect wage and hour rights. *McMahon,* 2010 WL 2399328, at \*7; *Sand v. Greenberg*, 2010 WL 69359, at \*3 (S.D.N.Y. Jan. 7, 2010).   Adequate compensation for attorneys who protect those rights by taking on such litigation furthers the remedial purpose of these statutes.   Such adequate compensation is consistent with the FLSA's purpose of eliminating "labor conditions detrimental to the maintenance of the minimum standard living" of workers through private lawsuits and "insur[ing] effective access to the judicial process" by removing the significant barrier of paying legal fees and costs out of pocket.   *United Slate, Tile & Composition Roofers, Damp & Waterproof Workers Ass'n, Local 307 v. G&M Roofing & Sheet Metal Co., Inc.,* 732 F.2d 495, 501-02 (6th Cir. 1984) (internal quotations omitted).

Where relatively small claims can only be prosecuted through aggregate litigation, and the law relies on prosecution by "private attorneys general," attorneys who fill that role must be adequately compensated for their efforts. *Beckman,* 293 F.R.D. 477; *see also Hernandez,* 2013 WL 1209563, at \*8. "If not, wage and hour abuses would go without remedy because attorneys would be unwilling to take on the risk."   *Id; see Sand* 2010 WL 69359, at \*3.   ("But for the separate provision of legal fees, many violations of the Fair Labor Standards Act would continue unabated and uncorrected.").

Since each of the factors noted above supports the reasonableness of the fee request of Class Counsel, it should be approved by the Court.

### B.  CROSS-CHECK

Following the *Goldberger* decision, the trend in the Second Circuit has been to apply the percentage method and loosely use the lodestar method as a "baseline" or as a "cross check."

*Goldberger*, 209 F.3d at 50. [28]   As part of the cross check, the lodestar is determined by multiplying

the hours reasonably expended on the case by a reasonable hourly rate.  *Hicks v. Morgan Stanley*

*& Co.,* 2005 U.S. Dist. LEXIS 24890, at *27 (S.D.N.Y. Oct. 19, 2005).  Courts can then consider

whether a multiplier is warranted based on factors such as (1) the contingent nature of the expected

compensation for services rendered; (2) the consequent risk of non-payment viewed as of the time

of filing the suit; (3) the quality of representation; and (4) the results achieved.  *In re Boesky*, 888

F.Supp. 551, 562 (S.D.N.Y. 1995); *see also Goldberger*, 209 F.3d at 47; *Savoie v. Merchants*

*Bank*, 166 F.3d 456, 460 (2d Cir. 1999).

"Courts commonly award lodestar multipliers between two and six." *Sewell v. Bovis*

*Lend Lease, Inc.,* 2012 WL 1320124, at *13 (S.D.N.Y. Apr. 16, 2012) (citations omitted).

Here, Class Counsel are seeking a lodestar multiplier of approximately 5.77.  This is well

within the range of multipliers that have been granted by courts in this Circuit and elsewhere. [29]

---

[28] "Should the Court utilize the lodestar method as a cross check, the Court "is not required to wade through every billed hour, every claimed service, and charged expense, effectively conducting an audit of plaintiffs' fee petition and then issue a telephone book of minute findings."  *In re Volkswagen*, 784 F.Supp.2d at 47 (citation omitted).  The lodestar is calculated by multiplying the number of hours incurred by the hourly rate for the services rendered.  *In re Tyco*, 535 F.Supp.2d at 265 n.12.

[29] Here, Class Counsel's lodestar for the services rendered specifically with respect to the Claims totals $582,741.50. *See* Kane Decl. at 40. This results in a multiplier of approximately 5.77.  Such a multiplier is decidedly within the commonly accepted range.  *See generally Zeltser v Merrill Lynch & Co., Inc.,* 13 CIV. 1531 FM, 2014 WL 4816134, at *9 [SDNY Sept. 23, 2014], (applied a lodestar of 5.1 stating "[a]pplying the lodestar method as a "cross check," see id. at 50, the Court finds that the fee that Class Counsel seeks is reasonable. Courts regularly award lodestar multipliers of up to eight times lodestar, and in some cases, even higher multipliers. See Vizcaino v. Microsoft Corp., 290 F.3d 1043, 1052–54 (9th Cir.2002) (listing nationwide class action settlements where multiplier ranged up to 19.6); Sewell, 2012 WL 1320124, at *13 ("Courts commonly award lodestar multipliers between two to six.")"; Beckman v. Keybank, N.A. 293 F.D.R. 467 (S.D.N.Y. 2013), awarding a multiplier of 6.3. Davis v. JP Morgan Chase & Co., No. 01-CV-6492L, slip op. 17 (S.D.N.Y. Oct. 11, 2011) (5.3 multiplier on one third fee of $42 million settlement; also citing other authorities).  And this multiplier is within or lower than many lodestar multipliers approved by the Courts in this Circuit in many others  See, e.g., Conley v. Sears, Roebuck & Co., 222 B.R. 181, 187 (D. Mass. 1998) (approving lodestar multiplier of 8.9); New England Carpenters Health Benefits Fund et. Al. v. First Databank, Inc., 2009 U.S. Dist. LEXIS 68419, at *10 (D. Mass. Aug. 3, 2009) (multiplier of 8.3). See, e.g., Caissie, No. 08-30220-MAP (5x+ multiplier and 30% fee in a $9.15 million FLSA/state law wage and hour class and collective action settlement).  Thus, even were it to be considered, the lodestar cross check would support a finding that the

The lodestar multiplier Class Counsel seeks is also reasonable because it will diminish over time. *Parker v. Jekyll & Hyde Entm't Holdings, LLC,* 2010 WL 532960, at *2 (S.D.N.Y. Feb. 9, 2010).  As set forth above, Class Counsel is often called upon to perform work after final approval hearing, including, answering class member questions, answering questions from the claims administrator, and negotiating and working with Defendants' counsel on any issues that may arise in connection with administering the Settlement and distributing the QSF.  Particularly in this case, Class Counsel has fielded and continues to field calls and questions from opt-ins. *See* Kane Decl. ¶ 41. The fact that Class Counsel's fee award will not only compensate them for time and effort already expended, but for time that they will be required to spend administering the settlement going forward, also supports their fee request. *See Diaz,* 2010 WL 5507912, at *7.

## C.  ADMINISTRATION FEES

The Court preliminarily appointed JND as the Settlement Claims Administrator in this Action.  JND is an experienced administrator of class action settlements nationwide. See JND Decl. ¶ 1.  The Court need not address the fees and costs of the Claims Administrator, as such fees and costs will be paid by Defendants on top of the Gross Settlement Amount. For the Court's information, JND has indicated that its final estimated administrative fees are approximately $25,000 which is in line with similar settlements in this District. *See Flores, et al. v. K.C. 53 LLC, et al.,* No. 12-cv-8095 (S.D.N.Y. Sept. 16, 2013). JND Decl. ¶ 18.  Thus, Plaintiffs respectfully request that JND be approved as administrator.

---

requested amount of attorneys' fees, costs and expenses is reasonable.

**D. SERVICE AWARD TO SETTLEMENT CLASS REPRESENTATIVES SHOULD BE APPROVED.**

Service Payments for "class representatives" have "an important function in promoting class action settlements." *Denney v. Jenkens & Gilchrist*, 230 F.R.D. 317, 355 (S.D.N.Y. 2005) (*quoting Sheppard v. Consol. Edison Co. of N.Y., Inc.*, 2002 U.S. Dist. LEXIS 16314 (S.D.N.Y. Aug. 1, 2002)). "Service awards fulfill the important purpose of compensating plaintiffs for the time they spend and the risks they take." *Yuzary,* 2013 WL 5492998, at *12 (citing *Massiah v. MetroPlus Health Plan, Inc.,* 2012 WL 5874655, at *8 (E.D.N.Y. Nov. 20, 2012)).

Here, the Settlement Agreement provides for Class Counsel and the Plaintiffs to seek Service Payments for the Named Plaintiffs in an amount up to but not exceeding $2,500.00 for each Class Representative and $1,000 for each Opt-in who participated in the mediation and related activities. The amount of the requested Service Payments in this case is consistent with, if not lower than those that have been granted for class representatives who were willing to put their names forward to represent others similarly situated within this Circuit.[30] The Class Representatives provided support to this litigation by agreeing to step forward to serve as the representatives for the Settlement Class, and fulfilled their commitments in that regard. They assisted Class Counsel materially with the case. *See* Kane Decl. ¶ 51.

Further, Class Counsel posits that the payment of these amounts to the Class Representative is warranted because stepping forward to have one's name on a wage and hour complaint involves a certain degree of scrutiny. Accordingly, "[e]ven where there is not a record of actual retaliation, notoriety, or personal difficulties, class representatives merit recognition for assuming the risk of such for the sake of absent class members." *Guippone v. BH S&B Holdings, LLC*, 2011 U.S. Dist.

---

[30] The terms incentive and service awards or payments are used interchangeably by litigants and the courts.

LEXIS 126026, at *20 (S.D.N.Y. Oct. 28, 2011). Here, the Class Representative aided in the investigation, assisted Class Counsel in obtaining a comprehensive understanding as to the multitude of issues PPAs face, worked on ensuring the Complaint filed appropriately documented the claims, and agreed to the risks associated with putting his name on the Action.

Importantly, the fact that Class Counsel and Plaintiffs would seek Service Payments in an amount up to but not exceeding $2,500.00 for the Class Representatives and up to $1,000.00 for those individuals who participated in settlement negotiations and/or mediation was set forth in the Notice. No Members of the Settlement Class objected. Accordingly, Class Counsel's request for Service Payments to Kareem Hines, Priamo Fermin, and Neftali Pellot of $2,500 each and Collette Sajjad, Raynier Delgadillo, Christian Pellot, Robert Tracey, John Carusi, and Michael Sapia of $1,000 each is reasonable and should be approved.

## VI. CONCLUSION

For the foregoing reasons, the Plaintiffs respectfully request that this Court grant, in its entirety, Plaintiffs' Unopposed Motion for Certification of the Settlement Class and Collective, Final Approval of Proposed Settlement, and Approval of Attorney's Fees and Costs, Claims Administrator and Service Payments and enter the accompanying proposed Order on Final Approval of Class and Collective Action Settlement and Judgment and the relief set forth therein. Executed on this the 25nd day of January, 2019, in Garden City, New York.

/s/  Sara Wyn Kane_____
**VALLI KANE & VAGNINI LLP**
Robert J. Valli, Jr.
Sara Wyn Kane
James A. Vagnini
600 Old Country Road, Suite 519
Garden City, NY 11530
Telephone: (516) 203-7180

*Attorneys for Plaintiffs*