USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 2·5·2019

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

KAREEM HINES, PRIAMO FERMIN, and
NEFTALI PELLOT, individually and on behalf
of all others similarly situated,

                      Plaintiff,

v.

CBS TELEVISION STUDIOS, A DIVISION OF
CBS STUDIOS INC.; CBS BROADCASTING
INC.; EYE PRODUCTIONS INC.; and
POSSIBLE PRODUCTIONS INC
                      Defendants.

Civil Action No:  15-cv-07882

## [~~PROPOSED~~] ORDER GRANTING PLAINTIFFS' UNOPPOSED MOTION FOR CERTIFICATION OF THE SETTLEMENT CLASS, FINAL APPROVAL OF THE CLASS AND FLSA COLLECTIVE ACTION SETTLEMENT, AND APPROVAL OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES AND SERVICE AWARDS

Plaintiffs Kareem Hines, Priamo Fermin, and Neftali Pellot, along with the opt-in Plaintiffs

and all members of the Settlement Class (together "Plaintiffs") worked as Parking Production

Assistants ("PPAs") to secure sets, lots and streets on production sites throughout the New York

Metropolitan area during the course of various television and/or film productions allegedly

produced by CBS Television Studios, A Division of CBS Studios Inc., CBS Broadcasting Inc.,

Eye Productions Inc., and Possible Productions Inc.[1] (for the purposes of this motion,

"Defendants," and together with Plaintiffs, the "Parties").   On October 6, 2015 Plaintiffs

commenced a putative class action under Federal Rule of Civil Procedure 23 and as a Collective

---

[1] On or about January 28, 2016; Hill of Beans Productions, Inc.; K/O Paper Products, Inc.; Action This Day!, Inc.; and CBS Corporation were voluntarily dismissed by Plaintiffs (Dkt. No.'s 77, 79, 80 & 81), and on May 24, 2016, Relativity Media, LLC, Timberman-Beverly Productions, Inc., and Showtime Entertainment, Inc. were voluntarily dismissed by Plaintiffs with the filing of the Amended Complaint. (Dkt. No. 118).

1

Action under the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* ("FLSA"), claiming that Defendants failed to properly pay Plaintiffs overtime wages to which they were entitled under the FLSA and New York State Labor Law §§190 *et seq.* (the "NYLL"), and asserting violations under the Wage Theft Prevention Act of NYLL § 195 ("WTPA"). Defendants continue to deny such allegations and contend that at all times they complied with the FLSA and NYLL, and that Plaintiffs' claims are not suited for class and collective treatment, except for the limited purpose of this proposed Settlement.

To facilitate settlement negotiations, the Parties agreed to and did exchange detailed information and numerous documents, and conducted detailed legal and factual analyses of the Plaintiffs' claims and Defendants' defenses, including damages. Both sides conducted their own analysis regarding the: (1) potential exposure if the claims were to proceed; (2) relative strengths and weaknesses of the legal merits of their respective positions; and (3) risks associated with each side's respective positions. See Decl. of Sara Wyn Kane in Support of Plaintiffs' Unopposed Motion for Certification of the Settlement Class, Final Approval of the Class Action Settlement, and Approval of the FLSA Settlement ("Kane Decl.") ¶ 7.

Class Counsel conducted a significant factual investigation into Plaintiffs' claims. The investigation included interviewing over one hundred potential opt-ins and/or putative class members, obtaining and reviewing hundreds of pages of data pertaining to job duties, payment methodology, pay stubs and working conditions. Class Counsel also investigated and analyzed the applicable state and federal law as applied to the facts discovered with regard to the claims asserted and the potential defenses thereto. *See* Kane Decl. ¶ 8.

The Parties' respective investigations included the informal exchange of spreadsheets which included over twenty-five thousand weeks of payroll entries and financial data

produced by Defendants.  Class Counsel undertook extensive investigation and analysis of these records in order to determine the Class' potential damages if their claims were successful, including back pay, liquidated damages, wage theft prevention damages, and any other damages. *See* Kane Decl. ¶ 8.

The Parties engaged in numerous in person and telephonic discussions and negotiations prior to obtaining the services of a mediator.  The Parties then utilized the services of Dina R. Jansenson, an experienced class and collective action mediator, including in similar wage and hour cases with hybrid allegations pursuant to both state and federal law. Kane Decl. ¶ 14.  The matter was not resolved at mediation; rather the Parties continued negotiations for many additional months.  The Parties again met both in person and telephonically to resolve several issues related to the scope of the class and settlement.  Kane Decl. ¶ 16.  Finally, on or about May 2, 2018, over two years after the initial complaint was filed, the Parties agreed in principle on the bulk of the financial terms of a settlement. Thereafter, the Parties' continued to engage in substantial, arm's-length negotiations and discussions on all other aspects of the case and negotiated the remaining terms of the Settlement which were memorialized in a formal Settlement Agreement executed by the Parties in and around July 27, 2018. *Id.*

On August 24, 2018, this Court entered an Order preliminarily approving the Settlement on behalf of the class set forth therein (the "Class" or the "Class Members"), conditionally certifying the Settlement Class, appointing Valli Kane & Vagnini LLP as Class Counsel ("VKV"), Kareem Hines, Priamo Fermin, and Neftali Pellot as Class Representatives, JND as Claims Administrator ("JND") and authorizing notice to all Class Members.  Dkt. No. 193.

On October 24, 2018, JND sent Court-approved notices to 1,098 Class Members informing them of their rights under the Settlement, including the right to opt out or object to the Settlement, and of Class Counsel's intention to seek up to one-third of the Gross Settlement Amount for attorneys' fees.  JND Decl. ¶ 5 annexed to Kane Decl. as Exhibit 2. There have been no objections to the Settlement and no one has opted out. *Id.* at 15-18.

On January 22, 2019, Plaintiffs filed an Unopposed Motion for Certification of the Settlement Class, Final Approval of the Class and FLSA Collective Action Settlement, and Approval of Attorneys' Fees, Reimbursement of Expenses and Service Awards ("Motion for Final Approval"). Defendants do not oppose the Motion for Final Approval.

The Court held a fairness hearing on February 5, 2019.

Having considered the Motion for Final Approval, including the supporting declarations and exhibits thereto, the oral argument presented at the fairness hearing, and the complete record in this matter, for the reasons set forth therein and stated on the record at the fairness hearing, and for good cause shown,

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED:**

**CERTIFICATION OF THE SETTLEMENT CLASS**

1.      The Rule 23 NYLL Settlement Class is defined as all individuals who held the position of "Parking Production Assistant" or "PPA" and/or provided any services as a PPA from October 6, 2009 through April 29, 2017, on any production produced, co-produced, or financed by Defendants (as defined by the Settlement Agreement), including but not limited to CBS Television Studios, A Division of CBS Studios Inc., CBS Broadcasting Inc., Eye Productions Inc., Possible Productions Inc., or any of their parents, subsidiaries or Affiliates and who are listed on the Class List provided by Defendants to the Claims Administrator.; Kane Decl. Ex. 1

(Settlement Agreement) §1.9, 1.13, 1.33.

2.    All of the requirements for class certification under Federal Rule of Civil Procedure 23(a) and (b)(3) have been met.

3.    Federal Rule of Civil Procedure 23(a)(l) is satisfied because there are approximately 1,000 Rule 23 Class Members and, thus, joinder is impracticable. *See Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995) ("[N]umerosity is presumed at a level of 40 members....").

4.    The proposed class also satisfies the commonality requirement of Federal Rule of Civil Procedure 23(a)(2).   Among the Plaintiffs and Class Members there are common issues of fact and law, including whether Defendants had a policy or practice of failing to properly pay them overtime wages in violation of state wage and hour laws and/or failing to keep accurate time records of the hours they worked. *Morris v. Affinity Health Plan, Inc.,* 859 F. Supp. 2d 611, 615-16 (S.D.N.Y. 2012) (commonality satisfied where, among other allegations, plaintiffs claimed that defendant had a policy of not paying all class members overtime pay).

5.    Federal Rule of Civil Procedure 23(a)(3), typicality, is satisfied because Plaintiffs' wage and hour claims arise from the same factual and legal circumstances that form the basis of the Class Members' claims as set forth in the Complaint. *See Hernandez v. Merrill Lynch & Co., Inc.,* No. 11 Civ. 8472, 2013 WL 1209563 , at *3 (S.D. N.Y. Mar. 21, 2013) (typicality satisfied where "[p]laintiffs' [overtime] claims arose from the same factual and legal circumstances that form[ed] the bases of the [c]lass [m]embers' claims"); *Morris,* 859 F. Supp. 2d at 616 (same).

6.    Federal Rule of Civil Procedure 23(a)(4) is satisfied because there is no

evidence that the Plaintiffs' and Class Members' interests are at odds.  *See In re Drexel Burnham*

*Lambert Group, Inc.*, 960 F2d 285, 291 (2d Cir. 1992); *Beckman v. KeyBank, N.A.*, 293 F.R.D.

467, 473 (S.D.N.Y. April 29, 2013) (finding adequacy requirement met where there was no

evidence that plaintiffs' and class members' interests were at odds); *accord Diaz v. Eastern.*

*Locating Service Inc.*, No. 10 Civ. 4082, 2010 WL 5507912, at *3 (S.D.N.Y. Nov. 29, 2010).

      7.    In addition, the adequacy requirement of Rule 23(a)(4) is satisfied. VKV

attorneys have "extensive knowledge in litigating wage and hour collective and class actions such

as this, are familiar with the complex factual and legal questions at issue in this Litigation, and

have and will continue to adequately represent the Plaintiffs and members of the Settlement Class

in a comprehensive and vigorous manner." *Kudo v. Panda Express* 7:09-cv-00712 (S.D.N.Y. June

26, 2015), Dkt. No. 309: 3; *see also Indergit v. Rite Aid,* 1:08-cv-09361, Dkt. 239 at 40 (S.D.N.Y.

Sept. 26, 2013), (finding it "clear that counsel is qualified and able to conduct the litigation."

Dkt. No. 239: 40

      8.    Rule 23(b)(3) is also satisfied.  Plaintiffs' common factual allegations and

legal theory - that Defendants violated federal and state wage and hour laws by failing to

properly pay them for overtime hours - predominate over any factual or legal variations

among Class Members. *See Torres v. Gristede's Corp.*, No. 04 Civ. 3316, 2006 WL 2819730,

at *16 (S.D.N.Y. Sept. 29, 2006) (plaintiffs "introduced sufficient proof that Defendants

engaged in a common practice to deny employees overtime pay [,]" and "[t]his issue

predominates over any individual calculations of overtime wages").

      9.    Class adjudication and settlement of this case is superior to individual

adjudication because it will conserve judicial resources and is more efficient for class members,

particularly those who lack the resources to bring their claims individually. *See Beckman,* 293

F.R.D. at 473. Concentrating the litigation in this Court is desirable because much of the allegedly wrongful conduct occurred within its jurisdiction.

## APPROVAL OF THE SETTLEMENT

10.     The Court hereby grants the Motion for Final Approval and finally approves the Settlement as set forth in the Settlement Agreement.

11.     Rule 23(e) requires court approval for a class action settlement to insure that it is procedurally and substantively "fair, reasonable and adequate." Fed. R. Civ. P. 23(e). To determine procedural fairness, courts examine the "negotiating process leading to the settlement." *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.,* 396 F.3d 96, 116 (2d Cir. 2005); *D'Amato v. Deutsche Bank,* 236 F.3d 78, 85 (2d Cir. 2001).

12.     Courts examine procedural and substantive fairness in light of the "strong judicial policy in favor of settlement" of class action suits. *Wal-Mart Stores,* 396 F.3d at 116 (internal quotation marks omitted). "The law favors settlement, particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation." A "presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Wal-Mart Stores,* 396 F.3d at 116 (internal quotation marks and citation omitted); *see also D'Amato,* 236 F.3d at 85. "Absent fraud or collusion, [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *In re EVCI Career Coils. Holding Corp. Sec. Litig.,* No. 05 Civ. 10240, 2007 WL 2230177, at *4 (S.D.N.Y. July 27, 2007).

### *Procedural Fairness*

10.     The proposed settlement is procedurally fair because it was reached through

vigorous, arm's-length negotiations and after experienced counsel had evaluated the merits of Plaintiffs' claims. *See Toure v. Amerigroup Corp.,* No. 10 Civ. 5391, 2012 WL 3240461, at *3 (E.D.N.Y. Aug. 6, 2012) (finding settlement to be "procedurally fair, reasonable, adequate, and not a product of collusion" after plaintiffs "conducted a thorough investigation ... [and] enlisted the services of an experienced employment [law] mediator"); *Diaz,* 2010 WL 5507912, at *4.

11.     Class Counsel conducted thorough investigations and evaluated the claims and defenses, engaged in targeted discovery with Defendants, prepared and participated in a mediation, engaged in additional discovery, evaluation and negotiation and ultimately reached a settlement after over a year of negotiations between the Parties. Kane Decl. ¶¶ 7-17.

12.     At the conclusion of the negotiations, the Parties had reached an agreement in principal. During the next several months, the Parties negotiated the remaining terms of the Settlement Agreement.  Kane Decl. ¶¶ 16-17.

13.     These arm's-length negotiations involved counsel and a mediator well-versed in wage and hour law, thereby "rais[ing] a presumption that the settlement they achieved meets the requirements of due process." *See Wal-Mart Stores,* 396 F.3d at 116; *McMahon v. Olivier Cheng Catering & Events, LLC,* No. 08 Civ. 8713, 2010 WL 2399328, at *4 (S.D.N.Y. Mar. 3, 2010).

14.     In addition, "courts encourage early settlement of class actions, when warranted, because early settlement allows class members to recover without unnecessary delay and allows the judicial system to focus resources elsewhere." *Yuzary v. HSBC Bank USA, N.A.,* 2013 WL 5492998, at *5(S.D.N.Y. October 2, 2013); *Castagna v. Madison Square Garden, L.P.,* No. 09 Civ. 10211, 2011 WL 2208614, at *10 (S.D.N.Y. Jun. 7, 2011)

(commending Plaintiffs' attorneys for negotiating early settlement). The Parties here acted responsibly in reaching an early settlement. *See In re Interpublic Sec. Litig.,* No. 02 Civ. 6527, 2004 WL 2397190, at *12 (S.D.N.Y. Oct. 26, 2004).

**Substantive Fairness**

15.     To determine substantive fairness, courts determine whether the Settlement's terms are fair, adequate, and reasonable according to the factors set forth in *City of Detroit v. Grinnell Corp.,* 495 F.2d 448 (2d Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.,* 209 F.3d 43 (2d Cir. 2000).

16.     The Settlement is substantively fair. All of the factors set forth in *Grinnell,* which provides the analytical framework for evaluating the substantive fairness of a class action settlement, weigh in favor of final approval.

17.     The *Grinnell* factors are: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. 495 F.2d at 463.

18.     Litigation through trial would be complex, expensive and long. Therefore, the first *Grinnell* factor weighs in favor of final approval.

19.     The Class's reaction to the Settlement is very positive. Pursuant to the Preliminary Approval Order, the Notice was sent by first-class mail to each respective Class

Member at his or her last known address (with re-mailing of any returned Notice for which new addresses could be located). Additionally, for those individuals for whom Defendants had email addresses received the Notice via email. The Notice sent to Class Members included an explanation of the basis for the Settlement and an average amount of the Class Members' awards. The Notice also informed Class Members of their right to object to or exclude themselves from the Settlement and explained how to do so. Finally, there was also a static website maintained for all Settlement Class Members to access the relevant documents from the PPA Actions and the Settlement, including an explanation of the method utilized to calculate individual settlement awards. There was also a Reminder Postcard Mailed to any Settlement Class Member who had not yet submitted a Claim Form. Thus, the Court finds that the Notice fairly and adequately advised Class Members of the terms of the Settlement, as well as the right to opt out of or to object to the settlement, and to appear at the fairness hearing conducted on February 5, 2019. Class Members were provided with the best notice practicable under the circumstances.

20.    The Court further finds that the Notice and its distribution comported with all constitutional requirements, including those of due process.

21.    No Class Member opted out of or objected to the Settlement. Moreover, approximately 57% of Class Members returned the Claim Form, which represents a substantial response from the Settlement Class. This overwhelmingly favorable response demonstrates that the Class approves of the Settlement, which further supports final approval. *In re Elec. Books Antitrust Litig.,* 639 F. App'x 724, 727 (2d Cir. 2016) ("As to factor two, [the Court] concluded that the class implicitly approved the settlement, observing that "[t]here have been under the

10

circumstances few exclusions and few objections.").[2]

22.     The Parties have completed enough discovery to recommend settlement. When evaluating the level of discovery completed, "[t]he pertinent question is whether counsel had an adequate appreciation of the merits of the case before negotiating." *Prasker v. Asia Five Eight LLC,* 08 Civ. 5811(MGC), 2010 WL 476009 at *5 (S.D.N.Y. Jan. 6, 2010); *Mills v. Capital One, N.A.*, No. 14 CIV. 1937 HBP, 2015 WL 5730008, at *5 (S.D.N.Y. Sept. 30, 2015). The Parties engaged in targeted discovery to allow the Parties to assess the claims and calculate damages in advance of negotiations. Defendants produced extensive payroll data which Plaintiffs reviewed. Kane Decl. ¶ 10.

23.     The third *Grinnell* factor weighs in favor of final approval.

24.     The risk of establishing liability and damages further weighs in favor of final approval. "Litigation inherently involves risks." *Clem v. Keybank, N.A.*, No. 13 CIV. 789 JCF, 2014 WL 2895918, at *6 (S.D.N.Y. June 20, 2014). Indeed, "[i]f settlement has any purpose at all, it is to avoid a trial on the merits because of the uncertainty of the outcome." *In re Ira Haupt & Co.,* 304 F. Supp. 917, 934 (S.D.N.Y. 1969); *see also Velez v. Majik Cleaning Serv., Inc.,* No. 03 Civ. 8698, 2007 WL 7232783, at *6 (S.D.N.Y. June 25, 2007). Here, Plaintiffs faced numerous risks as to both liability and damages, including overcoming Defendants' defenses regarding pay practices and whether they violated applicable law at all, as well as the determinative rate of pay. The proposed settlement eliminates this uncertainty. The fourth

---

[2] *See, also Acevedo v Workfit Med. LLC,* 187 F Supp 3d 370, 380 (W.D.N.Y. 2016) (Court finds approximately 21% of eligible class members opting into the settlement to be a high participation rate for a "claims made" settlement agreement; *citing to Sylvester v. CIGNA Corp.*, 369 F.Supp.2d 34, 52 (D.Me.2005) ("'[C]laims made' settlements regularly yield response rates of 10 percent or less."). See also *Velez v. Novartis Pharms. Corp.*, 04 Civ. 09194 (CM), 2010 U.S. Dist. LEXIS 125945, *18-19 (S.D.N.Y. Nov. 30, 2010) (approving settlement with 7% claim rate); *See also*; Andrew C. Brunsden, *Hybrid Class Actions, Dual Certification, and Wage Law Enforcement in the Federal Courts*, 29 Berkeley J. Emp. & Lab. L. 269, 291–94 (2008) (surveying 21 opt-in FLSA cases and finding average participation rate to be 15.71%).

and fifth factors therefore weigh in favor of final approval.

25.     The risk of obtaining collective and class certification and maintaining both through trial is also present. Contested collective and class certification motions would likely require extensive discovery and briefing.  If the Court did authorize notice to the FLSA collective, Defendants would likely challenge that determination by seeking decertification at a later date, after the close of discovery. If the Court were to grant class certification, Defendants might also seek to file an appeal under Federal Rule of Civil Procedure 23(f), the resolution of which would require an additional round of briefing. Settlement eliminates the risk, expense, and delay inherent in the litigation process.  The sixth *Grinnell* factor weighs in favor of final approval.

26.     Even if Defendants could withstand a greater judgment, their ability to do so, "standing alone, does not suggest that the settlement is unfair." *Frank v. Eastman Kodak Co.,* 228 F.R.D. 174, 186 (quoting *In re Austrian,* 80 F. Supp. 2d at 178 n.9). Therefore, the seventh *Grinnell* factor is neutral and does not preclude the Court from granting final approval.

27.     The substantial amount of the Settlement weighs in favor of final approval. The determination of whether a settlement amount is reasonable "does not involve the use of a mathematical equation yielding a particularized sum." *Frank,* 228 F.R.D. at 186 (quoting *In re Austrian,* 80 F. Supp. 2d at 178). "Instead, there is a range of reasonableness with respect to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.'" *Id.* (quoting *Newman v. Stein,* 464 F.2d 689,693 (2d Cir. 1972)). Here, the recovery for the class equates to the value of 100% of their overtime damages, and the equivalent of 53% of alleged liquidated damages <u>after</u> payment of attorney fees, service

awards and the reserve fund. *See Hyun v Ippudo USA Holdings*, 2016 WL 1222347 at 2 (S.D.N.Y. Mar. 24, 2016) (Court approves Class members receiving approximately 51% of their back wages as fair and reasonable, "based on the immediacy of payment with a cash settlement and the litigation risks associated with proceeding to trial").

28.     Additionally, here Defendants have represented that they have taken or will in the future take steps to review their pay practices and policies to ensure that they continue to comply with applicable wage and hour laws. Thus, the eighth and ninth *Grinnell* factors strongly weigh in favor of final approval.

29.     The Court hereby grants Plaintiffs' Motion for Final Approval and approves the Settlement as set forth in the Settlement Agreement.

## APPROVAL OF THE FLSA SETTLEMENT

30.     The Court hereby approves the FLSA settlement as well. The FLSA Collective is defined as all individuals who held the position of "Parking Production Assistant" or "PPA" and/or provided any services as a PPA from October 6, 2012 through April 29, 2017, on any production produced, co-produced, or financed by Defendants (as defined by the Settlement Agreement), including but not limited to CBS Television Studios, A Division of CBS Studios Inc., CBS Broadcasting Inc., Eye Productions Inc., Possible Productions Inc., or any of their parents, subsidiaries or Affiliates who are listed on the Class List provided by Defendants to the Claims Administrator. See Kane Decl. at Exhibit 1 at Settlement Agreement §§1.9, 1.13, 1.32.

31.     Because a collective action under the FLSA requires individuals to opt in before they are bound (rather than opt out in order not to be bound, as in the Rule 23 class action context), "settlement of a collective action does not implicate the same Due Process concerns as the settlement of a class action," and therefore is subject to less searching scrutiny. *Lizondro-Garcia*

*v. Kefi LLC*, 300 F.R.D. 169, 179 (S.D.N.Y. 2014).   In most cases, a settlement that meets the standards of Rule 23 will also "reflect a fair and reasonable compromise of disputed issues" under the FLSA. *Id.* The Court should "therefore focus on the standards of Rule 23" when deciding whether to approve a class settlement agreement. *Riedel v. Acqua Ancien Bath New York LLC*, No. 14 CIV. 7238 (JCF), 2016 WL 3144375, at *6 (S.D.N.Y. May 19, 2016).

32.     As this Settlement is fair and reasonable under all of the factors used to assess a settlement under Rule 23, including the *Grinnell* factors, the Settlement is also fair and reasonable for purposes of the FLSA.

**AWARD OF ATTORNEYS' FEES AND COSTS, ADMINISTRATION FEES, AND SERVICE AWARDS**

33.     In assessing a request for attorneys' fees Rule 23(g) requires the court to consider "the work counsel has done in identifying or investigating potential claims in the action, . . . counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action,  . . . counsel's knowledge of the applicable law, and . . . the resources counsel will commit to representing the class."). *See Damassia v. Duane Reade, Inc.,* 250 F.R.D. 152, 165 (S.D.N.Y. 2008) (internal quotation marks omitted); Federal Rule of Civil Procedure 23(g).

34.     Class Counsel are experienced and well-qualified employment lawyers. *See Kudo v. Panda Express* 7:09-cv-00712, (S.D.N.Y.) (noting that "Plaintiffs' counsel have experience in this type of case, and have succeeded in negotiating an award that has real value for the class members...." (Dkt. No. 309: 3); *Indergit v. Rite Aid,* 1:08-cv-09361 (S.D.N.Y) (Judge J. Paul Oetken, in granting certification and denying decertification, stated "[i]t is clear that counsel is qualified and able to conduct the litigation.") (Dkt. No. 239: 40).

35.     The work that Class Counsel has performed in litigating and settling this case

demonstrates their commitment to the Class and to representing the Class's interests. Class Counsel have committed substantial resources, time and attention to prosecuting this case.

36.     Courts in this Circuit often use the percentage of the fund method in assessing fee requests in common fund cases like this one. *Wal-Mart Stores,* 396 F.3d at 121; *Yuzary,* 2013 WL 5492998, at \*9; *Diaz,* 2010 WL 5507912, at \*7.  Although the Court has discretion to award attorneys' fees based on the lodestar method or the percentage-of-recovery method, in wage and hour class action lawsuits, public policy and a number of recent decisions favor a common fund attorneys' fee award. *Beckman,* 293 F.R.D. 477; *McMahon,* 2010 WL 2399328, at \*7. *McDaniel v. County of Schenectady,* 595 F.3d 411, 417 (2d Cir. 2010).

37.     Here, while Class Counsel spent significant time investigating the claims, assessing viable parties, meeting with over 100 impacted individuals, collecting thousands of pages of data from Class Members and Defendants, reviewing the relevant data, filing consents to join, determining damages, preparing for and attending a mediation, negotiating a settlement, and resolving extensive disputes pertaining to the specifics included in the settlement and the Settlement Agreement, and the case was resolved relatively early in the arc of litigation.  Thus, Class Counsel should not be penalized by a reduction of their fee request, but rather rewarded for the extent and expediency of the recovery.  Indeed, "[t]he percentage method better aligns the incentives of plaintiffs' counsel with those of the class members because it bases the attorneys' fees on the result they achieve for their clients, rather than on the number of motions they file, documents they review or hours they work. *See Wal-Mart*, 396 F.3rd at 121.

38.     Additionally, no Class Member objected to Class Counsel's request for one-third of the Gross Settlement Amount, which also provides support for Class Counsel's fee

request.

39.     All of the factors in *Goldberger v. Integrated Resources, Inc.,* 209 F.3d 43, 48-49 (2d Cir. 2000) weigh in favor of the requested fee award.

40.     Further, courts in the Second Circuit routinely grant attorneys' fees of one-third in wage and hour cases. *See Garcia v. Atlantico Bakery Corp.*, No. 13 CIV. 1904 (JCF), 2016 WL 3636659 (S.D.N.Y. June 29, 2016) ("1/3 of the total award is the customary contingency percentage in FLSA cases" citing *Torres v. Gristede's Operating Corp. 519 Fed.Appx. 1, 5 (2d Cir. 2013); see also Clem v. Keybank, N.A.*, No. 13 CIV. 789 JCF, 2014 WL 2895918, at *9 (S.D.N.Y. June 20, 2014) ("Class Counsel's request for 33% of the [$3,500,000] fund is reasonable and consistent with the norms of class litigation in this circuit.") (internal quotations and citations omitted).[3]

41.     Applying the lodestar method as a "cross check," *see Id.* at 50, the Court finds that the fee that Class Counsel seeks is reasonable under that analysis as well. "Courts commonly award lodestar multipliers between two and six." *Sewell v. Bovis Lend Lease, Inc.,* 09 CIV. 6548 (RLE), 2012 WL 1320124, at *13 (S.D.N.Y. April 16, 2012 (citations omitted. Here, Class Counsel are seeking a lodestar multiplier of approximately 5.77. This is within the range of multipliers that have been granted by courts in this Circuit and elsewhere.

42.     The lodestar multiplier Class Counsel seeks is also reasonable because it will diminish over time. *Parker v. Jekyll & Hyde Entm't Holdings, LLC,* No. 08 Civ. 7670

---

[3] *See also Davis v. JP Morgan Chase & Co.*, No. 01-CV-6492L, slip op (S.D.N.Y. Oct. 11, 2011) (one third of $42 million settlement fund in FLSA and state wage and hour case). Rangel v. 639 Grand St. Meat & Produce Corp., No. 13-CV-3234 (LB), 2013 WL 5308277 at *1 (E.D.N.Y. Sept. 19, 2013) (approving attorneys' fees of one-third of FLSA settlement amount, plus costs, pursuant to plaintiff's retainer agreement, and noting that such a fee arrangement "is routinely approved by the courts in this Circuit"); Febus v. Guardian First Funding Group, LLC, 870 F. Supp. 2d 337, 340-41 (S.D.N.Y. 2012) (Stein, D.J.)("a fee that is one-third of the fund is typical" in FLSA cases).

(BSJ)(JCF), 2010 WL 532960, at *2 (S.D.N.Y. Feb. 9, 2010).  In wage and hour cases, Class Counsel is often called upon to perform work after the preliminary and even final approval hearing. *See* Kane Decl. at 40. The fact that Class Counsel's fee award will not only compensate them for time and effort already expended, but for time that they will be required to spend administering the Settlement going forward, also supports their fee request. *See Diaz,* 2010 WL 5507912, at *7.

43.    Additionally, Class Counsel is not seeking their costs in addition to the one-third sought in attorney's fees.  Courts typically allow counsel to recover their reasonable out-of-pocket expenses on top of their fees. *See In re Indep. Energy Holdings PLC Sec. Litig.,* 302 F. Supp. 2d 180, 183 n.3 (S.D.N.Y. 2003).   Here, Class Counsel's unreimbursed expenses, including court and  process server fees, mediation fees, postage and courier fees, transportation, working meals, photocopies, electronic research, are reasonable and  were incidental and necessary to the representation of the class and are incorporated into the fee requested. Kane Decl. at 42.  However, Class Counsel are not seeking the recovery of costs on top of their fees.  Instead, the requested fee award includes all of their costs.

44.    In assessing the propriety of a fee award the Court must also look to the recovery obtained.  In this case Class Counsel negotiated an amount for attorney fees only after obtaining significant recovery of each Class Member's actual damages, and the fee amount was then added to the common fund.  As a result, the recovery for the class is not diminished by the fees award and allows the Class Members to recover the equivalent of 100% of their alleged overtime damages, and the equivalent of 53% of alleged liquidated damages after attorneys' fees and the service awards.  Thus, Class Counsel's request for one-third of the Gross Settlement Amount is reasonable and "consistent with the norms of class litigation

in this circuit." *Yuzary,* 2013 WL 5492998, at *10 (internal quotation marks and citation omitted).

45.     Plaintiffs' request that Class Counsel be awarded one-third of the Gross Settlement Amount (before the addition of interest to the Qualified Settlement Fund "QSF") is granted.

46.     The attorneys' fees shall be paid from the QSF.

**ADMINISTRATION FEES**

47.     On August 24, 2018 the Court preliminary appointed JND as the Settlement Claims Administrator in this action.

48.     JND is an experienced administrator of Class Action settlements nationwide. See JND Declaration in support of Plaintiffs Unopposed Motion for Final Approval.

49.     Because Defendants are responsible for the costs of the claims administration directly, the Court does not need to address those costs.

50.     The Court confirms JND as the Settlement Claims Administrator.

**SERVICE PAYMENTS**

51.     The Court finds that it is reasonable to grant Service Payments for the Class Representatives Kareem Hines, Priamo Fermin, and Neftali Pellot in the amount of $2,500 each as well as $1,000 each to Collette Sajjad, Raynier Delgadillo, Christian Pellot, Robert Tracey, John Carusi, and Michael Sapia, who participated in settlement negotiations and/or mediation. This amount shall be paid from the QSF.

52.     Service awards are common in class action cases and serve to "compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by

the plaintiffs]. "*Yuzary,* 2013 WL 5492998, at *12 (quoting *McMahon,* 2010 WL 2399328, at

*9) (internal quotation marks omitted). "Service awards fulfill the important purpose of

compensating plaintiffs for the time they spend and the risks they take." *Yuzary,* 2013 WL

5492998, at *12 (citing *Massiah v. MetroP/us Health Plan, Inc.,* No. 11 Civ. 5669, 2012 WL

5874655, at *8 (E.D.N.Y. Nov. 20, 2012)).

**CONCLUSION**

The Court Orders that:

- The terms of this Settlement are fair, reasonable and adequate and in the best interests of the Settlement Class.[4]

- Kareem Hines, Priamo Fermin, and Neftali Pellot are appointed as representatives of the Settlement Class;

- Valli Kane & Vagnini LLP are appointed as Class Counsel to represent the Settlement Class under Fed. R. Civ. P. 23 and Section 216 (b) of the FLSA;

- Class Counsel's request for Attorneys' Fees and Costs is approved;

- The Service Payments are approved;

- Defendants shall fund the Settlement in accordance with the terms of the Settlement Agreement;

53.    The "Effective Date" of the Settlement shall be thirty (30) days after the date

of this Order if no party appeals this Order. If a party appeals this Order, the "Effective

Date" of the Settlement shall be the latest of the following, if applicable: (1) upon final

---

[4] The terms of the Settlement meet the December 2018 amendment to Rule 23, in that the Court has reviewed and determined that (1) class counsel and representatives are adequate; (2) the proposed settlement was negotiated at arms' length; (3) the relief provided in considering the costs, risks and delay of trial and/or appeal; the effectiveness of the proposed method of distributing relief, the proposed award of attorneys' fees and any agreement required to be identified under Rule 23 (e)(3) is more than adequate; and (4) the class members are treated equitably relative to each other. Additionally, the class notice included electronic mail where possible, which comports with the amendment.

affirmance of the Order or (2) final dismissal of any further petition and the time to further appeal/petition has expired. This Order shall constitute a judgment for purposes of Rule 58 of the Federal Rules of Civil Procedure. Within 25 days of the Effective Date, the Settlement Claims Administrator shall distribute the funds in the QSF by making the following payments:

- Paying Class Counsel one-third ($3,325,834.00) of the Gross Settlement Amount of ($9,977,502.00), before the additional interest is added;

- Paying Service Payments to the Class Representatives Kareem Hines, Priamo Fermin, and Neftali Pellot in the amount of $2,500 each as well as $1,000 each to Collette Sajjad, Raynier Delgadillo, Christian Pellot, Robert Tracey, John Carusi, and Michael Sapia for a total of $13,500;

- Paying the Class Members in accordance with the allocation plan described in the Settlement Agreement and further explained in Exhibit A to the JND Decl. annexed as Exhibit 2 to the Kane Decl.

- Paying the Named Plaintiffs (Kareem Hines, Priamo Fermin, and Neftali Pellot) an additional $5,000 in exchange for the general release of claims;

- Paying the Settlement Claims Administrator the costs for the services of the Settlement Claims Administrator; and

- Paying the employer's share of any Employer Payroll Taxes as set forth in the Settlement Agreement.

54. The Court retains jurisdiction over this action for the purpose of enforcing the Settlement Agreement and overseeing the distribution of the settlement funds. The Parties shall abide by all terms of the Settlement Agreement, which are incorporated herein, and this

Order.

55.     Upon the Effective Date, the action shall be dismissed in its entirety, with prejudice.

56.     With respect to (i) the Released State Law Claims of all Class Members who have not excluded themselves from the Settlement, and (ii) the Released Federal Law Claims of all Class Members who have opted into the lawsuit or participated in the Settlement by cashing Settlement Checks or submitting a Claim Form, the Class Members shall be permanently enjoined from pursuing and/or seeking to reopen the claims that have been released pursuant to the Settlement.

It is so ORDERED this 5th day of February, 2019.

Honorable Robert W. Lehrburger
United States Magistrate Judge